Georgiana Mercier

*vs.*

The John Hancock Mutual Life Insurance Co.

Kennebec.    Opinion, October 19, 1945.

*William H. Niehoff*, for the plaintiff.

*Locke, Campbell & Reid*, for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, JJ.

MANSER, J. The defendant company issued a life insurance policy of $1,000 to Dennis Pignoni, son of the plaintiff, who was named as beneficiary. The application was written by an authorized resident agent at Waterville on April 15, 1943. No medical examination was required. The young man was 24 years of age, 5 ft. 10 in. in height and weighed 155 lbs. The evidence, unquestioned, shows that he was apparently in good health. He died July 11, 1943 from pneumonia due to tuberculosis of uncertain duration. He received medical attention for eleven days.

The defendant company contested payment upon the ground that Pignoni made false representations to the effect that no albumin or sugar had ever been found in his urine, and that he had never been told that he had symptoms of diabetes, when in truth he had been diabetic for ten years and had used the insulin treatment therefor. Also that he stated his brother was in good health, when he was at the time a patient in a

tuberculosis sanitarium, and died soon thereafter. From the evidence adduced during the trial, it was stipulated by the parties that Pignoni did not know at the time of the application that he himself was afflicted with tuberculosis.

The position of the plaintiff was that the agent was explicitly informed of the diabetes. The stepfather of the young man, speaking of the visit of the agent to solicit insurance, said:

"Well, he wanted to sell him a policy, and I told him, "No," I said, "because he has got diabetes; you can't sell no insurance to a man who has got diabetes." But he said, "That won't make no difference; he may never die on account of it, and he may live to be 90 years old."

This epitomizes the testimony of both Mr. and Mrs. Mercier on the point, who said they were present at the time the young man was interviewed.

With relation to all the questions concerning the physical history of the applicant, the testimony for the plaintiff is that no questions were asked of the applicant by the agent except as to whether he had had a surgical operation, and that no question was asked him concerning the condition of health of his brother.

The testimony of the agent was taken by deposition in Alaska. He testified that he read each question to the applicant, whom he did not know prior to taking the application; that the interview was with him alone; that he had no previous knowledge of any physical ailment nor did he learn of any except as to an appendectomy; that the answers as written by him were as given by the applicant. In rebuttal to this, the mother and stepfather testified they were both present during the entire interview and that the agent had known both Pignoni boys since childhood, had seen them frequently up to 1940, and had called them by nicknames.

The issues presented to the jury were whether there were,

in fact, any material misrepresentations or concealments by or on behalf of the applicant; whether the agent knew or was informed of the diabetes and took the responsibility of assuring the applicant that it made no difference and need not be mentioned in the application; and again whether the agent failed to ask the question as to the health of the brother of the applicant, and instead assumed the responsibility of inserting a favorable answer.

The testimony was flatly contradictory. The instructions by the presiding Justice were clear and lucid upon the factual issues. It was for the jury to determine as to the credibility of witnesses and the weight of the evidence. The record would not warrant a ruling by this Court that the verdict was manifestly wrong.

This brings us to a consideration of the exceptions. These were taken as a result of the refusal by the presiding Justice to give certain instructions, in the form requested, and which were as follows:

"1. The statute C. 56, Sec. 55, 1944 Revised Statutes does not apply to the insurance contract before you, if you find that it is a Massachusetts contract, unless it is proved that Massachusetts has a similar statute.

2. The statute, C. 56, Sec. 55, 1944 Revised Statutes applies to contracts of insurance "effected" by agents. It does not apply if the contract is not closed by the agent. Taking the application is not enough, for the contract is not completed until acceptance by the insurance company.

3. The statute does not apply if the effect of application of it in this case would be to permit a fraud to be practiced upon the insurer.

4. The statute does not apply if there is collusion on

the part of the applicant or the beneficiary or both, and on the part of the agent.

5. This contract is a Massachusetts contract."

As background for the consideration of the legal questions thus arising, we must consider the effect of our statutory provisions relating to out of State companies.

The provisions of R. S., C. 56, §§38-57 inclusive, have application to foreign insurance companies, which by definition mean companies not incorporated in this State. Under the conditions, limitations and restrictions there imposed, such insurance companies are permitted to carry on their business and procure insurance from residents of Maine. To protect the rights of Maine residents, definite requirements are made. Such companies must first secure from the Commissioner of Insurance license to do business in this State. They must qualify in accordance with the specific provisions of our law. They must employ resident agents. These agents must be licensed by the State. They must submit to the jurisdiction of our Courts in all litigation with the residents of Maine. No conditions, stipulations or agreements shall deprive Courts of this State of jurisdiction of actions. Notice of process may be served upon any agent or upon the Commissioner.

Then, of paramount importance, comes the positive provision of §55 of the Chapter,

"Such agents and the agents of all domestic companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them. The Company is bound by their knowledge of the risk and of all matters connected therewith. Omissions and misdescriptions known to the agent shall be regarded as known by the company, and waived by it as if noted in the policy."

This law does not discriminate against foreign companies.

> "The simple purpose of the statute is that those seeking insurance and those afterwards holding policies, may as safely deal with the agents, with whom alone they ordinarily transact their business, as if they were dealing directly with the companies themselves." *Maxwell* v. *Insurance Co.*, 114 Me., 170 at 176; *LeBlanc* v. *Standard Insurance Co.*, 114 Me., 6.

The first of these cases was against a Maine Company and the second against a foreign company. The phrase that the agent shall be regarded as in the place of the Company has been interpreted as meaning that the agent "is the company in all respects regarding any insurance effected by him." Cases above cited.

The fundamental question is whether a foreign company can avoid the effect of the statutory provision which, in exact terms, is designed to apply to its contracts, by asserting that such contracts are not executed in this State. It is suggested there is no requirement that the statutory clause must be inserted in the contract, and there is no penalty provided for noncompliance with its terms. It is, however, a basic provision of our law, and our citizens are thereby apprized of the fact that they may rely upon the knowledge and acts of the agents of foreign companies in insurance matters, just as they can with agents of domestic companies. If any foreign company is held to be exempt from the operation of the law by reason of a technical construction as to the place of the contract, the penalty might well be the loss of its right to do business in Maine.

Without undertaking to discuss the fine distinctions, ofttimes confusing, drawn by many Courts and legal authorities as to the place of the contract, and which arise from the conflict of laws in various States, we might well adopt the broad

general rule as applicable here that the State in which the application is made, the premium paid, and the policy delivered is the place where the contract is entered into. 11 Am. Jur., Conflict of Laws, ¶ 107. That is what took place in the present case.

Further, while the contract required that due proof of death of the insured must be sent to the home office and the policy surrendered, yet it did not provide, as contended by the defendant, that payment should be made at the home office. It flatly agreed to make payment to Georgianna Mercier, mother, who lived in Waterville, and is the plaintiff here.

The question of whether the policy was, technically, a Maine or a Massachusetts contract was not passed upon by the presiding Justice or the jury. It did not need to be.

The situation presented here is simply whether the defendant Company is responsible for the acts of a duly authorized agent, licensed in the State of Maine, in connection with an application for insurance which he procured in Maine from a citizen thereof, when our statute says that such agent stands in the place of the Company with regard to all insurance effected by him.

In the Restatement of the Law upon the title Conflict of Laws, §345, the rule is succinctly stated as follows:

> "The law of the state in which an agent or a partner is authorized or apparently authorized to act for the principal or other partners determines whether an act done on account of the principal or other partners imposes a contractual duty upon the principal or other partners."

Then under the Comment, after discussing the effect of an agent's acts, we find the definite statement:

> "But whether or not a particular act of the agent or

partner is authorized, the law of the state where the act is done determines whether the principal is bound by a contract with a third person."

Professor Beale in his work on Conflict of Laws, which is an elaboration of the Restatement, says further, p. 1193:

"Each state has jurisdiction to impose obligations on a person as a result of the acts which he has done *or caused another to do* within that state."

Thus is put into concrete form a sound rule applicable to the instant case, as collated from the trend of judicial opinion. We agree with the logic and reasoning of Justice White in *Hooper* v. *California,* 155 U. S., 648 at 658, 39 L. Ed., 297, 15 S. C., 207:

"If the contention of the plaintiff in error were admitted, the established authority of the State to prevent a foreign corporation from carrying on business within its limits, either absolutely or except upon certain conditions, would be destroyed. It would be only necessary for such a corporation to have an understanding with a resident that in the effecting of contracts between itself and other residents of the State, he should be considered the agent of the insured persons, and not of the company. This would make the exercise of a substantial and valuable power by a state government depend not on the actual facts of the transactions over which it lawfully seeks to extend its control, but upon the disposition of a corporation to resort to a mere subterfuge in order to evade obligations properly imposed upon it. Public policy forbids a construction of the law which leads to such a result, unless logically unavoidable. . . .

The proposition that, because a citizen might make such a contract for himself beyond the confines of his State, therefore he might authorize an agent to violate in his behalf the laws of his State, within her own limits, involves a clear *non sequitur*, and ignores the vital distinction between acts done within and acts done beyond a State's jurisdiction."

Exceptions numbered 1 and 5 are found to be without merit.

The second exception seeks to uphold the contention that the insurance was not "effected" by the agent because the application had to be sent to the Company for acceptance. The presiding Justice, with reference to this request, instructed the jury as follows:

"The statute which I read to you applies to insurance effected by agents. I interpret the word "effected" in that case as meaning procured by the agent. In other words, it is undisputed in this case that the agent solicited the insurance, obtained the application and premium, forwarded them to the company at its home office in Boston, that the company sent the policy back to the agent here in Maine, and that he delivered the policy to the insured. I instruct you that that policy was effected—that is, effected by the agent within the meaning of the statute which I read to you."

This properly interpreted the intent of the statute and this exception is without merit.

As to exception 3,

"The statute does not apply if the effect of it in this case would be to permit a fraud to be practiced upon the insurer."

Again, the defendant is seeking to avoid the effect of the applicable statute. As the verdict of the jury negatived the proposition that any fraud had been committed by the applicant, then what the agent knew or did was the knowledge and act of the Company itself. No fraud can be practiced upon a Company which is charged with the knowledge of the acts and omissions of its agents. The presiding Justice fully covered the questions at issue between the parties upon this point.

As to exception 4,

"The statute does not apply if there is collusion on the part of the applicant or the beneficiary or both, and on the part of the agent."

As an abstract question of law, the statement is correct. The statute does not apply in cases of fraud on the part of the applicant or collusion between the applicant and agent. In this case, however, it was the position of the plaintiff that no fraud was committed by the applicant. It was the contention of the defendant that its agent faithfully performed his duty, asked all the questions found upon the form provided by the Company and exactly recorded the answers as given. There was nothing in the evidence upon which to predicate a claim of collusion. This term has been well defined as practically synonymous with conspiracy. Under the circumstances here involved, it would amount to a secret agreement between the applicant and the agent to deceive and defraud the insurance company. The Court can not assume that a situation existed which both parties denied, and as to which there could be no reasonable inference.

*Motion denied.*
*Exceptions overruled.*