**Eva LEVESQUE**

**v.**

**Otis LEVESQUE and/or American Employers' Insurance Company.**

Supreme Judicial Court of Maine.

Sept. 22, 1976.

Robinson, Solman, Hunt & Kriger by James S. Kriger, Portland, Ferris A. Freme, Caribou, for plaintiff.

Mitchell & Ballou by John W. Ballou, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Eva Levesque, the petitioner, was injured on October 2, 1967, while she was working on a harvester in a potato field owned and farmed by her husband, Otis Levesque, the individual defendant. Mrs. Levesque filed a petition for an award of compensation with the Industrial Accident Commission which was dismissed on the "jurisdictional" ground that, with respect to this claimant, Otis Levesque was not an "assenting employer" within the meaning of the Workmen's Compensation Act as that Act was effective at the time of the injury. From a pro forma decree of the Superior Court (Aroostook County) affirming the Commission's order, the petitioner has appealed. We sustain the appeal and remand to the Commission for further proceedings.

Otis Levesque was the sole proprietor of a masonry business which employed approximately twelve persons. In addition, Levesque raised potatoes on a 60 acre farm. His practice was to temporarily assign his masonry employees to the farm as workers were needed there. The appellant, who was not employed in her husband's masonry business, worked on the farm on a seasonal basis, and was so occupied at the time she was injured.

The defendant American Employers' Insurance Company (American) issued Otis Levesque a workmen's compensation and employer's liability insurance policy for the period from August 14, 1967, to August 14, 1968. Under the policy heading "EXCLUSIONS" the following language is found: "This policy does not apply: . . . (b) unless required by law or described in the declarations, to domestic employment or to farm or agricultural employment . . ."

■ The appellant concedes that she was strictly a farm employee of her husband. It is plain, therefore, that the policy exclusion clause (b), supra, precludes her from recovering workmen's compensation benefits *unless* her inclusion within the scope of the policy is either "required by law" or she is within the class of employees "described in the declarations" of the policy. The petitioner's inclusion within the class of employees covered by the policy is not required by law. As of the date of the appellant's injury, the first paragraph of 39 M.R.S.A. § 21 (as amended 1965) read as follows: "Every private employer subject to this Act, who has secured the payment of compensation in conformity with sections 21 to 27 shall be conclusively presumed to be an assenting employer with respect to employees other than those engaged in domestic service or in agriculture as seasonal or casual farm laborers, subject to the provisions hereinafter stated." Because of her status as a farm employee, the petitioner cannot avail herself of the statutory presumption that her husband was an assenting employer with respect to her.

The question is reduced, then, to whether the appellant is within the class of employees described in the declarations of the policy. Under "Item 4" ("Classification of Operations") of the declarations, the single typewritten listing, "Masonry N.O.C."[1] ap-

---

* WEATHERBEE, J., sat at oral argument and participated in conference but died before this opinion was adopted.

1. "Not Otherwise Classified."

pears. The petitioner acknowledges that she does not fall within this classification. However, the testimony of the insured, Otis Levesque, intimates that there might have been an oral modification of the orginal declarations of the policy. On direct examination, Mr. Levesque attempted to testify that subsequent to the issuance of the written policy, he had a conversation with a Mr. Engels of the McGrath Agency, the broker through whom American's insurance was obtained. His testimony indicates that he had become curious as to whether those employees working on his farm were covered under the policy he owned at that time and that he questioned Mr. Engels on the matter, but when he began testifying as to Mr. Engels' response, the Commissioner interrupted him and excluded the testimony as "hearsay evidence" that would "clog the record."[2]

The record reveals that following the accident in October of 1967, Mr. Levesque had another conversation with a representative of McGrath, in an attempt to ascertain whether the injury would be compensable or not. Upon receiving a negative answer, Levesque prematurely cancelled the policy on January 13, 1968. Shortly thereafter, he received information about the insurance carrier's auditor who would be coming to look at his books. Levesque advised his bookkeeper to prepare the complete payroll, farm and construction, for use by the auditor.[3] The "Report of Audit" subsequently issued by American covers the period from August 14, 1967, the policy issuance date, to January 13, 1968, the date of cancellation of the policy. Under the heading "Description of Coverage," the report indicates for farm employees a payroll of $2,171.00, a rate of $2.84 and an

earned premium of $62.00. It is evident that American's auditor included the earned premium for farm employees in his calculation of the refund due to Levesque. Had Engels in fact orally amended the declarations of the policy in his conversations with Levesque, it is conceivable that subsequent ratification by American could be found in this "Report of Audit," as well as in American's previous collection and retention of premiums which, as the audit indicates, had covered farm employees.

Believing that petitioner's argument was that the "Report of Audit" itself had amended the policy, the Commission rejected such contention with the brief observation, "It is inconceivable to this Commission how an audit made on March 25, 1968 can vary the terms of the policy . . . ." Were the crucial issue indeed one of contract reformation, we would conclude that the Commission lacked the jurisdiction to even entertain an argument that the policy was amended by the "Report of Audit." This Court has consistently adhered to the position that "The jurisdiction of the Industrial Accident Commission is entirely statutory and all its actions must be based upon authority granted by statute." *Joyce v. Conary,* Me., 317 A.2d 794, 795 (1974). The Commission possesses only such powers as are conferred upon it by express legislative grant or such as arise therefrom by implication as necessary and incidental to the full and complete exercise of the powers granted. *Conners' Case,* 121 Me. 37, 115 A. 520 (1921). Since there is no provision in our Workmen's Compensation Act which either expressly or by implication empowers the Commission to reform an instrument, the Commission would have exceeded its au-

---

2. It would have been appropriate at this juncture for counsel to have made an offer of proof by analogy to the then existing Rule 43(c) M.R.C.P. [abrogated effective February 2, 1976] and now prescribed by Rule 103 (a)(2) Maine Rules of Evidence.

3. When American issued to Levesque the policy of insurance, the insured paid a pre-

mium of $636. Upon the cancellation of the policy by Levesque on January 13, 1968, American conducted an audit and calculated that Levesque was entitled to a refund of $310, the difference between "premiums previously charged" ($636) and "earned premiums" ($326).

thority, had it attempted to reform the policy.[4] Our reading of the record, however, leads us to conclude that petitioner was not seeking to reform the contract, but rather was attempting to prove ratification of a previously orally amended policy.

We accordingly believe that the Commissioner erroneously denied petitioner the opportunity to put into evidence the terms of the oral agreement, if any, with Engels. As of the date of the alleged conversation, 24 M.R.S.A. § 535 (repealed 1969) provided that an insurance company agent was to be regarded "in the place of the company" in all respects as to any insurance effected by him; the company would be bound by the acts and by the knowledge of the agent concerning all matters connected therewith. *See Mercier v. John Hancock Mutual Life Insurance Co.,* 141 Me. 376, 44 A.2d 372 (1945); *Hurd v. Maine Mutual Fire Insurance Co.,* 139 Me. 103, 27 A.2d 918 (1942). The testimony relating to the conversation with Engels should have been admitted into evidence. However, the Commissioner's evidentiary ruling effectively precluded appellant from demonstrating the existence of an oral amendment of the policy, if such be the fact.

We recognize the remedial nature of the Workmen's Compensation Act, and the necessity of liberally construing its provisions in order to accomplish the beneficent purposes intended and to avoid incongruous or harsh results. *Boyce's Case,* 146 Me. 335, 81 A.2d 670 (1951); *Simmons' Case,* 117 Me. 175, 103 A. 68 (1918). This mandate has clearly been imposed on

the Commission by the Legislature through the enactment of 39 M.R.S.A. § 92 which prescribes that in interpreting the Act, the Commission shall "construe it liberally and with a view to carrying out its general purpose." Our Court has consistently recognized and adopted this principle of interpretation, often stating that the underlying object of the Act is to provide compensation to injured workmen for loss of earning capacity. *Cook v. Colby College and Liberty Mutual Insurance Co.,* 155 Me. 306, 154 A.2d 169 (1959); *Fennessey's Case,* 120 Me. 251, 113 A. 302 (1921). In attempting to respond fully to the spirit and letter of this guiding principle and to do justice to the underlying philosophy of the Act, the injured employee should at least have been given the opportunity to present all of her evidence. Our remand should not be construed as an expression of opinion on the merits of the employee's claim, but only a judicial effort to remove any adventitious obstacle in the path of the claimant's opportunity to fully present all relevant evidence consistent with her claim.

The entry must be:

Appeal sustained.

Remanded for proceedings consistent with this opinion.

It is further ordered that the appellee pay to the appellant an allowance of $300.-00 for her counsel fees, plus the actual reasonable out-of-pocket expense for this appeal.

All Justices concurring.

---

4. We are aware that other courts have held that a workmen's compensation commission may determine questions relating to the reformation of an insurance policy. See 3 Larson's Workmen's Compensation Law, § 92.40 (1973), and cases cited therein. These decisions, however, were rendered under statutory schemes substantially different from our own, and are inapposite to our discussion of Maine law.