JOHN FENNESSEY'S CASE.

Aroostook.    Opinion April 28, 1921.

*Workmen's Compensation Act.  "Status" defined.   There is a distinction between
    a judicially determined right to receive compensation while disability result-
    ing from accident continues, and the receiving of money, primarily from
    an erstwhile employer, but ultimately from society for supposed
    disability, when in reality not any exists.*

The word "status," as that term is used in the Workmen's Compensation Act,
    in inhibition of change of a compensation carrying decree, prior to appli-
    cation for a review thereof, has reference to the relation in which an injured
    person stands towards him who was his employer at the time of the accident.
    It means that if the question of such persons right to receive compensation
    be an adjudicated one, that question may not be reviewed previously to the
    date of application looking to that end.   But there is easily seen distinction
    between a judicially determined right to receive compensation while dis-
    ability resulting from accident continues and the receiving of money, pri-
    marily from an erstwhile employer, but ultimately from society for sup-
    posed disability, when in reality not any exists.

In accordance with the agreed facts, Mr. Fennessey's right to compensation
    should have been terminated as of the date that total disability on his part
    ceased.

On appeal by defendants.   This case went to the Law Court on an
appeal from the decision of the Chairman of the Industrial Accident
Commission.   On May 18, 1919, John Fennessey, claimant, while in
the employ of the Stebbins Lumber Company, received a personal
injury by accident arising out of and in the course of his employment,
and was decreed compensation for the period of his resulting total
incapacity to labor.   On or about June 5, 1920, claimant began work
for another employer, and while in such employment received another
personal injury, and compensation for total disability was allowed him
from the new employer.   Thus claimant received from both employers
compensation for total disability until about August 9, 1920.   The
first employer on learning of claimant's second employment and
injury, and the granting of compensation for total disability from the

second employer, while receiving compensation as aforesaid from such first employer, petitioned for a review of the original decree, and for the termination of the compensation thereunder, on August 9, 1920. On such petition the Chairman of the Industrial Accident Commission ordered that compensation under such original decree terminate from date of petition, and not from date claimant entered the employment of the second employer. The only question involved is as to whether the original compensation should terminate from date of filing of the petition, or from the date claimant entered the employment of the second employer. Appeal sustained.

Case stated in the opinion.

*Archibalds*, for plaintiff.

*Andrews & Nelson, and W. T. Gardiner*, for defendants.

SITTING: CORNISH, C. J., SPEAR, DUNN, WILSON, DEASY, JJ.

DUNN, J. On May 18th, 1918, one John Fennessey, an employee of the Stebbins Lumber Company, sustained personal injury "arising out of and in the course of his employment." He filed a petition under the Workmen's Compensation Act, and, on establishing the factors necessary to support his claim, was decreed compensation for the period of his resulting total incapacity to labor. R. S., Chap. 50, Secs. 30-34. Thus matters continued until August 9, 1920. At that time, for an injury suffered by him while working for another employer, for whom he began work on or about June 5th, then last past, Fennessey was adjudged by the Chairman of the Industrial Accident Commission to be totally disabled for work, as a result of the injury so sustained. Compensation was allowed him from the new employer accordingly. Thereupon employer number one, on learning of what recently had happened to Fennessey, filed with the Accident Commission a petition for a review of the original decree, and for the termination of the compensation that it provided for (R. S., Chap. 50, Sec. 36); which compensation the petitioner insisted, and insists, should be from the date on which Fennessey commenced laboring for the later, or second, employer; all this on the grounds that the earlier disability had then ended, and that overpayment already had been made for several weeks. Fennessey himself, in a separate writing, lent assent to the truth of the recitals of the petition, and incidentally expressed satisfaction and contentment

with the amount of money which he already had received. On the unquestioned facts, the Chairman of the Accident Commission ordered termination of compensation, but from the time of the filing of the petition, rather than relating the command back somewhat more than two months, to the day on which the first inability admittedly ceased. A Justice of this court vivified the order by the entry thereon of statute directed decree. R. S., Chap. 50, Sec. 34. The single question arising on appeal is whether what the chairman decided ought to have been otherwise.

The underlying object of the Workmen's Compensation Act, as Mr. Justice MORRILL aptly observed in *Emile Thibeault's Case*, 119 Maine, 336, is to pay an injured workman for his loss of capacity to earn. Such payment is made primarily by the industry or occupation in which the employee was injured; ultimately it is borne by society. The act bespeaks liberality in interpretation. Yet, as counsel suggested in argument, its liberality goes no further, and never was intended to go further, than to provide for compensation for an actual or a legally presumed resulting loss of the ability to work. In this is its whole design, a design woven of the warp and woof of an indemnity contemplated certainly and speedily to be paid.

Divergence of view in this case is attributable to phraseology of the act regarding the subject of a review of decision previously made. Employee or employer, within two years from the entry of decree, may petition the chairman of the commission for a review, because incapacity is ended, or that it is increased or diminished. And the chairman may, in accordance with the facts, and from the date of the application, increase the amount of compensation, or reduce or discontinue it, "or make such other order as the justice of the case may require, but shall order no change of the status existing prior to the application for review," runs the law. R. S., Chap. 50, Sec. 36. It will be noticed that the clause, introduced by the disjunctive conjunction "or", concerning the doing of that which Justice enjoins, is followed immediately by the words, "but shall order no change of the status existing prior to the application for review." Interpetation of the word "status," within the meaning of the act, is the hinge on which decision must turn. Apparently the chairman regarded himself as constrained to make his order operative from the day of the date of the filing of the application for review. To be sure, at first blush, cursory reading might lead one to such conclusion. Broad

construction, as we have seen, is expressly exacted.   If, in seeking for the meaning of a statute, a literal rule would produce irrational interpretation and absurd result, it should be eschewed.   Said the New York court in the case of *People* v. *Lacomb*, 99 N. Y., 43:   "In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances.   A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter.   It is the spirit and the purpose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute.   A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers."

In the present case the manifest initial purpose was that Mr. Fennessey should be compensated at a stipulated weekly rate for total loss of capacity to work, while such loss continued.   Only this, and nothing more.   Good faith and fair play were as much expected of him as from his employer or the latter's insurance carrier.   And be it said to his credit that, his attention called to the matter, he assumed such attitude.   It was open to him, when total disability had ceased or diminished, to file a petition for a review of the compensation carrying order.   Of course he could waive compensation as fully and freely after it was granted as he might have foregone request therefor. It would seem consistent for him and his employer mutually to agree as to the time when his total disability ceased, and, so agreeing, to join in asking revokement of the compensatory order.   It is not that the Legislature meant that payments should go on and on, and still on, in continuing duty on the one hand and right on the other, ranking higher in potency than the decree which brought both the duty and the right respectively into being, unless, and until, petition be filed for review.   The term "compensation" by necessary implication spurns the suggestion.   Compensation is not a gratuity; it is not charitableness.   Compensation makes good a lack or loss.   Contention that the language, "shall order no change of the status" is of trammel-

ing effect finds not more than mere semblance of sustention. Status has reference to the legal social relation and condition of a person; as the status of a married woman. *Burlen* v. *Shannon*, 3 Gray, 387. Derivatively the word relates to relationship. As used in the statute it means the relation in which an injured person stands towards him who was his employer at the time of the accident. It goes to his right to receive compensation. It means that if the question of such right be adjudicated that it may not be reviewed previously to the date of application. There is, however, easily seen distinction between a judicially determined right to receive compensation while disability resulting from accident continues and the receiving of money, directly or indirectly, from an erstwhile employer for supposed disability when in reality not any exists. The commission in the first instance made a virtually self-annulling decision; that is to say, its efficacy was to cease when total disability ended. Analogy will be found in a decree of alimony awarded on the dissolution of a marriage. Reconciliation ends alimony. Co. Litt., 32, 33. So, ordinarily, does the wife's remarriage. 60 Am. Dec., 672. Certainly the Legislature did not mean that injury incurred by a workman out of and in the course of his employment should continue without alleviation or cure until the filing of an application for review. That would outreason reason. But it is not more illogical than it would be to say it meant that, regardless of the fact that the employee to his own knowledge had fully recovered from total injury, nevertheless amends must be his until petition filed against him for a change of decision.

In accordance with the agreed facts, Mr. Fennessey's right to compensation should have been terminated as of the date that total disability on his part ceased.

The appeal is sustained. The decree appealed from hereby is modified so as to be effective from June 5, 1920.

*Appeal sustained.*