Richard J. DUFAULT

v.

**MIDLAND–ROSS OF CANADA, LTD. and/or Lumbermens Mutual Casualty Company.**

Supreme Judicial Court of Maine.

Dec. 7, 1977.

202

McTeague, Higbee & Tierney by Maurice Libner (orally), Patrick N. McTeague, Brunswick, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Robert Hazard (orally), Ronald D. Russell, Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

In July 1976, while employed in Jay, Maine, as a journeyman sheetmetal worker by Midland-Ross of Canada, Ltd. (Midland-Ross), Richard J. Dufault suffered an injury to his upper back. Dufault and Midland-Ross reached an agreement for compensation dated September 7, 1976, by which Midland-Ross agreed to pay Dufault compensation at the rate of $151.84 per week during his "present period of total incapacity beginning July 29, 1976." The Industrial Accident Commission approved the agreement on January 25, 1977. 39 M.R.S.A. § 94 (1964) (amended 1973).

In February, Midland-Ross petitioned for review of incapacity. 39 M.R.S.A. § 100 (1964) (amended 1973). Following a hearing the commissioner found that Dufault's incapacity for work was "not then connected to" the incident of July 1976 and ordered his compensation benefits suspended from the date of the decree, March 24, 1977. The employee appeals from the pro forma decree of the Superior Court entered in accordance with the commission's order.

We sustain the appeal and remand for the commissioner to enter specific findings of fact. In so doing, we reject the employee's assertion that the commissioner erred by receiving into evidence certain medical reports and by ordering his compensation benefits immediately suspended, notwithstanding this appeal.

I.

*Sufficiency of the Commissioner's Findings of Fact*

█ The commissioner who rules upon a petition is directed by statute to file with the commission his "decision, findings of fact and rulings of law, and any other matters pertinent to the questions so raised." 39 M.R.S.A. § 99 (1964). We have frequently emphasized our need for *specific* factual findings in order to enable this court on appeal to determine whether competent evidence supports the commission's decision and whether its decree is based either upon a misapprehension of fact or a misapplication of law to the facts. *E. g., Guerrette v. Fraser Paper, Ltd.*, Me., 348 A.2d 260 (1975); *Martel v. United States Gypsum Co.*, Me., 329 A.2d 392 (1974); *Foster v. Bath Iron Works Corp.*, Me., 317 A.2d 11 (1974); *Overlock v. Eastern Fine Paper, Inc.*, Me., 314 A.2d 56 (1974); *Bolduc v. Pioneer Plastics Corp.*, Me., 302 A.2d 577 (1973). As we observed in *Guerrette, supra* at 262:

"The Commission has the duty to make *specific* findings of basic ultimate facts upon which its order is predicated. In making such findings the Commission establishes an adequate foundation for appellate review, namely, the existence, or nonexistence, of competent evidence." (Emphasis in original)

█ The commissioner in the case at bar failed to carry out his duty to find the facts, as mandated by the statute and elucidated by numerous opinions of this court. The first paragraph of his order recites that at the hearing held on Midland-Ross' petition for review of incapacity, certain exhibits were received in evidence. The second, and concluding, paragraph consists of a single sentence:

"This Commission finds, on the medical evidence presented, that the employee's incapacity for work is not connected to the incident of July 23, 1976, and orders that compensation be suspended."

The conclusory language of that sentence generates such ambiguity that we must remand for specific findings of the facts underlying the commissioner's decision.

█ A petition for review of incapacity addresses itself to *change of circumstances* since the time of the earlier determination, by commission decree or by agreement of the parties approved by the commission, of the employee's disability and the causal connection of that disability to a work incident. 39 M.R.S.A. § 100 (1964) (amended 1973).[1] A change of circumstances appropriate to justify reduction or suspension of compensation (i) may consist of *change in the disability* of the employee, *Martel v. United States Gypsum Co., supra*, or (ii) may, in less common fact situations, consist of *change in the cause* of the employee's continuing disability, as, for example, through the occurrence of an independent supervening cause, *cf. Richardson v. Robbins Lumber, Inc.*, Me., 379 A.2d 380 (1977). In any

1. That statute reads, in pertinent part:

"While compensation is being paid . . . under any agreement, award or decree, *the incapacity of the injured employee due to the injury,* . . . may from time to time be reviewed by a single commissioner upon the petition of either party upon the grounds that *such incapacity* has subsequently increased, diminished or ended . . . ." (Emphasis added)

event, the benchmark from which either such change must be measured is the decree or agreement which, in the absence of fraud, establishes with binding force the degree of the employee's injury and its causative connection with his employment. Only changes in circumstances of disability or causation occurring *after* the decree or agreement count in support of making a change in compensation payments.

On a petition for review of incapacity, the employer has the burden of proving that since the time of the earlier determination, the employee has regained some work capacity, *i. e.,* that the condition of total or partial incapacity caused by a compensable injury has diminished or entirely ceased. *Dailey v. Pinecap, Inc.,* Me., 321 A.2d 492 (1974). The employer can meet this burden of proving change of circumstances in the employee's condition by producing medical evidence proving that the employee has regained an ability to perform some work ordinarily available in the community. *Connelly's Case,* 122 Me. 289, 119 A. 664 (1923). When that medical evidence is accepted and believed by the factfinder, *Pelchat v. Portland Box Co., Inc.,* 155 Me. 226, 229–30, 153 A.2d 615, 617 (1959), the employee, to defeat reduction or suspension of compensation, must come forth with evidence that he has used reasonable efforts to obtain the kind of work for which he is then suited but has nonetheless failed to obtain such work either because of his existing incapacity or because such work is in fact not then available in the community. *Martel v. United States Gypsum Co., supra; Pelletier v. Pinette,* Me., 259 A.2d 25 (1969).

On its face, the present order is susceptible of two interpretations. On the one hand, by a minimal exercise in deduction, it can be read as relating to a *change in Dufault's work capacity* subsequent to the earlier determination of total disability. That is, the commissioner's "finding" can be read as his conclusion from underlying findings of fact that (1) Midland-Ross, as the moving party, had met its burden of prov-

ing that Dufault had regained full work capacity, and that (2) Dufault had not then satisfied his burden of going forward with evidence that he, after reasonable efforts, had failed to obtain the work for which he was then suited.

On the other hand, the order can at least equally well be read to relate to a *break in the chain of causation* occurring subsequent to the earlier determination that his disability was caused by an incident at work on July 23, 1976. That is, the commissioner's "finding" can be read as being based upon an underlying finding that even though Dufault was still totally disabled, his work capacity was no longer causally connected to the July incident, but rather now arose from an independent cause intervening subsequent to the date of the parties' agreement for compensation.[2] Nothing, however, in the medical reports received by the commissioner as exhibits or in the testimony at the hearing supports such a finding. If the commissioner meant by the language of his order to indicate that he based his decision to suspend compensation upon a finding of break in the chain of causation after the agreement, his decision would be erroneous as a matter of law because of the absence of competent evidence to sustain the finding. *E. g., Soucy v. Fraser Paper, Ltd.,* Me., 267 A.2d 919 (1970).

The ambiguity in the commissioner's conclusory order precludes our review of the correctness of his decision. As we warned in *Overlock v. Eastern Fine Paper, Inc., supra* at 57:

"The Commission's failure to respond to its directed responsibility to make findings of fact and conclusions of law may well require this Court, in a future given instance, to remand a case to the Commission for findings of fact and conclusions of law thus impeding prompt appellate review. This Court should have before it the findings which are authority for a decision and constitute a basis therefor."

The case at bar presents the exact situation anticipated in *Overlock.* We remand for

---

**2.** Whether the date significant for this purpose is that of execution of the agreement or of its approval by the commission is discussed in the following part of this opinion.

the commissioner, on the present record, to state the specific findings of fact upon which his decision is based.

## II.

*Effective Date of the Parties' Agreement for Compensation*

On remand, it will be necessary for the commissioner to reexamine the evidence in the present record to make the required specific findings of fact. That evidence includes two medical reports introduced as exhibits by Midland-Ross in support of its petition for review. Those reports[3] were based upon examinations of Dufault by two specialists in the period of time *after* the parties on September 7, 1976 had entered into their agreement for compensation but *prior* to January 25, 1977, when the commission approved the agreement. If the January approval had the effect of an adjudication of the employee's condition *as of that date*, the approval would conclusively establish Dufault's condition of total incapacity based upon all the facts *then* existing, including those revealed in the medical reports. If such is the effect of the January approval, the employer on its petition to reduce compensation must prove a change in Dufault's condition *after* January 25, 1977. The prior medical reports would then not show any change in the employee's condition warranting reduction or suspension of compensation. Because the parties dispute the competency of the reports as evidence on the petition for review, we will here address the issue in the interest of aiding the commissioner on remand in reaching a speedy resolution of this litigation.

Although we have not previously had occasion to rule on the precise issue now presented, we have on numerous occasions affirmed the basic principle that an approved agreement for compensation has the force of a final adjudication to the extent of the facts agreed upon and the conditions considered by the parties as a basis for the compensation to be paid. *E. g., Crowley's Case*, 130 Me. 1, 153 A. 184 (1931); *Healey's Case*, 124 Me. 54, 126 A. 21 (1924); *Foster's Case*, 123 Me. 27, 121 A. 89 (1923). Applying this principle, we have held that an approved agreement for compensation conclusively establishes the existence of an initial compensable injury; and, if the parties agree that the employee is totally incapacitated, the agreement establishes that the total incapacity results from the compensable injury. *Soucy v. Fraser Paper, Ltd.*, Me., 267 A.2d 919 (1970). The commission's approval binds the employer to continue paying the approved rate of compensation until a final decision upon the petition for review of incapacity. *Mullen v. Brown Homes, Inc.*, Me., 358 A.2d 557 (1976).

The commission's approval is, however, of decidedly limited import. The parties do thereby become bound by an enforceable decree. Yet the facts which form the basis for that decree, as well as the issues resolved by it, depend upon the scope of the negotiations between the parties leading to formation of the agreement. When deciding whether to grant approval, the commission itself does not adjudicate the facts as of the date of approval; it merely ratifies the parties' mutual agreement as to the facts and gives it the weight of a judgment. In construing a workmen's compensation agreement (even one that has received the required approval of the administrative agency), we properly apply rules of interpretation applicable to private contracts, rather than those applicable to court judgments. We concur, therefore, with the reasoning advanced by the Georgia Supreme Court in support of its holding that medical evidence acquired after the date of the agreement's execution, but prior to its approval, was competent evidence upon a petition for review:

---

**3.** In his written opinion, Dr. Richard Swengel, a neurosurgeon, stated that the "principle [sic] limiting factor for this patient is pain, and I have suggested to him that his best avenue for success in the future would be to return to active life and active employment, the sooner the better." Dr. Andre Marcotte, an orthopedist, concluded, "It was rather difficult to correlate his physical findings and symptomatology . . . . I would allow this patient to return to some form of activity gradually."

"Our view is that . . . conclusiveness dates from the execution of the agreement. Res judicata applies only as to matters in issue or which could have been put in issue . . . and the employee's condition as of that time was put in issue and determined by the parties thereto when they entered their agreement. The board, when it approved their settlement, did not adjudicate that the employee's condition remained the same, and no such adjudication results, practically or legally. In giving approval to the parties' own settlement, the board had no occasion to see the employee or hear evidence as to his condition; its duty then was to ascertain whether the settlement was in accordance with the provisions of the Workmen's Compensation Act." *Fidelity & Casualty Co. of New York v. Parham*, 218 Ga. 640, 642, 129 S.E.2d 868, 870 (1963).

Upon Midland-Ross' petition for review, the medical reports of physical examinations of Dufault after the parties entered into their agreement that he was totally incapacitated are competent evidence of a change in his condition of incapacity, even though the physical examinations preceded the commission's approval of the agreement.[4] The commissioner may properly weigh that evidence upon remand.

### III.

*Suspension of Compensation Benefits Pending Appeal*

■ Irrespective of our disposition of the employee's present appeal, we must decide whether the commissioner erred in ordering the immediate suspension of the employee's compensation benefits, notwithstanding the employee's decision to appeal. We find the answer in section 100 of the Workmen's Compensation Act, 39 M.R.S.A. § 100 (1964) (amended 1973).[5] That provision empowers the commissioner upon review to "increase, diminish or discontinue" the employee's compensation "in accordance with the facts, as the justice of the case may require." That power is limited, however, by the preceding sentence, which provides in part that "[p]ending a hearing and *final decision* upon such petition for review . . . the payment of compensation shall not be decreased or suspended." (Emphasis added) For the reasons hereafter developed, we conclude that by "final decision" the statute means the commission's disposition of the petition for review and not the ultimate decision of this court after appeal. Therefore, the commissioner did not err in immediately suspending the employee's benefits.

The language of section 100 itself clearly means that once the commissioner has conducted a hearing and issued *his* final decree, the review contemplated by the statute as prerequisite to the commissioner's exercise of power to decrease or suspend compensation is complete. Following the limiting phrase "[p]ending a hearing and final decision upon such petition for review" comes the language authorizing the commissioner "upon *such review*" to order a change in compensation. "Such review" refers to the

---

4. 39 M.R.S.A. § 94 (1964) (amended 1973), which provides for commission approval of an agreement reached by the employer and the employee, does not specify a time within which the commission must act. It would appear that as a practical matter, once the agreement is filed by the parties the date of approval depends upon the internal work pressures facing the commission and its staff. For this reason as well, we decline to assign to the fortuitous date of approval the legal significance of an adjudication of total incapacity based upon the medical facts existing as of that date.

5. The legislature has recently eliminated any doubt as to the answer to this question. P.L.

1977, ch. 333, repealed former 39 M.R.S.A. § 104-A (enacted 1971; amended 1973) enacting in its stead a substitute provision expressly stating in part:

"If the commission, after a review of incapacity under section 100, issues an order or decision denying compensation to an employee, compensation shall be suspended from the date of the commission's order or decision, notwithstanding any appeal of the order or decision to the law court . . . ."

We read the quoted sentence to be simply a confirmation of the pre-existing law laid down by § 100.

preceding phrase. When read together, the sentences establish that the commissioner's order resulting from that review and hearing is the "final decision," after which the commissioner may increase, diminish, or discontinue compensation. The first of those sentences also refers twice to the filing of certain certificates "with the commission," again reinforcing the conclusion that the sentences have reference only to the proceeding (and therefore final decision) before the commission.

The limiting phrase "[p]ending a hearing and final decision upon such petition for review" was first inserted in the statute by P.L.1961, ch. 290, for a particular purpose. Previous versions of the statute had given the commissioner authority to order compensation terminated or reduced from the date of the filing of the petition for review. Decisions of this court construing former R.S.1916, ch. 50, § 36, for example, recognized that the commissioner had such statutory authority simply upon the filing of the petition for review. *E. g., Zooma's Case*, 123 Me. 36, 121 A. 232 (1923); *Fennessey's Case*, 120 Me. 251, 113 A. 302 (1921). In *Waltz v. Boston & Rockland Trans Co.*, 161 Me. 359, 212 A.2d 431 (1965), we construed the sentence inserted by the legislature in 1961 as a time limitation upon what, since enactment of the Workmen's Compensation Act in 1915, had been the commissioner's authority to terminate or reduce compensation after the filing of a petition for review. All other things being equal, two different interpretations of the time extent of the 1961 limitation are plausible: either (1) until "final decision" by the commission after the hearing on the petition for review or (2) until "final decision" on appeal. In view of the long duration of the prior rule which permitted immediate termination or reduction of compensation, we conclude that the legislature, by its 1961 amendment, meant to make the lesser change in the preexisting law.

On what appears to us the rather clear intendment of section 100, the commissioner's determination (whether right or wrong) that Dufault's condition of incapacity at the time of hearing was no longer connected to the July incident was *his* "final decision" upon the employer's petition for review. Once the commissioner had rendered that final decision, he was empowered by section 100 to "increase, diminish or discontinue" the payment of compensation to Dufault. Dufault's appeal did not affect the validity of the commissioner's immediate suspension of compensation benefits.

The entry must be:

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Industrial Accident Commission for further proceedings consistent with the opinion herein.

Further ordered that the appellees pay to the appellant an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., concurring.