George E. NELSON

v.

**TOWN OF EAST MILLINOCKET.**

Supreme Judicial Court of Maine.

June 11, 1979.

Sunenblick, Fontaine & Reben, by Stephen P. Sunenblick (orally), Donald F. Fontaine, Portland, for plaintiff.

Robinson & Kriger, by James S. Kriger (orally), John M. McCallum, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

George E. Nelson appeals from a pro forma decree of the Superior Court, Penobscot County, affirming an order of the Workers' Compensation Commission. We find that the lack of any expert comparative medical testimony in the record leaves the Commissioner's decision to reduce compensation payments without the requisite evidentiary support. Accordingly, we sustain the appeal and remand the case for dismissal of the Town's petition for review of incapacity.

Nelson severely injured his back on January 18, 1976, while employed as a fireman by the Town of East Millinocket (Town). Despite two myelograms and two laminectomies, he experienced, and continues to experience, a numbness in his left foot, a loss of muscular control in his left foot and leg (which requires him to wear a leg brace), and back pain. The parties signed an agreement, approved July 1, 1976, providing Nelson with compensation for total incapacity.

In December of 1976, Nelson suffered a serious heart attack for reasons unrelated to the back injury. In June of 1977, the employer filed a petition for review of incapacity on the theory that Nelson's incapacity was now caused at least in part by a heart condition that bore no connection to the January, 1976, accident.

Two specialists in orthopedic surgery, Dr. John F. McGinn and the late Dr. John A. Woodcock, were retained by the employer and the employee respectively to examine Nelson and testify regarding his capacity. Neither doctor had examined Nelson prior to May of 1977, some five months after the heart attack and ten months after the agreement had been approved, and both relied on hospital reports together with Nelson's own recollections to familiarize themselves with the employee's history. Although both doctors were examined extensively about their understanding of Nelson's medical history, the results of their examinations, and their opinions regarding the employee's current work capacity, neither was asked his opinion on the crucial question of whether Nelson's work capacity had altered since the agreement was approved on July 1, 1976.

The Commissioner held that only eighty percent of the petitioner's incapacity was work related and reduced the compensation with the following remarks:

> Mr. Nelson is essentially totally disabled by the combined effects of his injury and by the effects of heart deficiency which developed in the summer of 1977,[1] about a year and one half after his injury. 80% of the disability is traceable to his back injury and the treatment of it. The remainder results from his heart condition which appeared after his work-related back injury.

It is well settled that where an employer petitions for review of incapacity it carries the burden of proving that the circumstances pertaining to the employee's disability have changed since the Commission last issued a decree or approved an award. 39 M.R.S.A. § 100; *Matthews v. Boss*, Me., 389 A.2d 32, 34 (1978); *Dufault v. Midland-Ross of Canada, Ltd.*, Me., 380 A.2d 200, 203–04 (1977); 3 A. Larson, Workmen's Compensation Law §§ 81.32, 81.33 (1976). In *Dufault*, we allowed that the requisite change of circumstances could

---

1. The Commissioner's reference to the summer of 1977 as the period during which Nelson's heart troubles flared up is inaccurate: the record, as well as the briefs, dates the heart attack to December of 1976.

take the form of either a change in the disability of the employee or a change in the cause of the disability. *Id.* at 203. Immediately after making this observation, we noted:

> In any event, the benchmark from which either such change must be measured is the decree or agreement which, in the absence of fraud, establishes with binding force the degree of the employee's injury and its causative connection with his employment. Only changes in circumstances of disability or causation occurring *after* the decree or agreement count in support of making a change in compensation payments. *Id.* at 203–04. (emphasis in original.)

*See also Matthews v. Boss, supra* at 34. By restricting the scope of a review proceeding to changes occurring since the last decree or award, we seek to ensure that a petition for review of incapacity can never serve as a tool for prying open matters already settled. Thus, a reduction or suspension of payments "must be predicated upon a comparison of two conditions and cannot be grounded solely upon an estimate of the injured person's present degree of disability." *Moccia v. Eclipse Pioneer Division of Bendix Aviation,* 57 N.J.Super. 470, 477, 155 A.2d 129, 132 (1959).

 The evidentiary implications of this rule are clear. In order to withstand appellate review, a Commissioner's decision to order a change in compensation payments must be supported by expert comparative medical testimony in the record. *Van Horn v. Hillcrest Foods, Inc.,* Me., 392 A.2d 52, 54 (1978). As *Van Horn* illustrates, the fact that the physician testifying to the change in condition did not have the opportunity to examine the employee at the time of the previous decree or award will not necessarily render the physician unqualified.

> It is entirely appropriate for a doctor who has recently examined the employee to acquaint himself with the employee's previous condition by reviewing the medical reports made by other physicians. It is not necessary that the second physician personally agree with the findings or evaluations of the first physician. If the second physician is asked to assume, hypothetically, the validity of the findings of the prior examining physician, he may then give his opinion as to whether or not a change in condition has occurred, based on that assumption. *Id.* at 54–55.

In the instant case, Drs. McGinn and Woodcock indicated that they had studied certain hospital records made by physicians who had treated the employee in the past. Whether or not these reports gave the testifying doctors a sufficient basis for comparison we need not decide for neither was asked the crucial question of whether the employee's condition had changed. The resulting want of any comparative testimony in the record undermines the validity of the Commissioner's decision.

The Town appears to argue that the intervention of a new factor affecting Nelson's condition relieved them of the burden of introducing comparative testimony. In that connection, they rely on the following passage from Professor Larson's treatise:

> The requirement that the evidence of change be comparative is satisfied not only by testimony cast in terms of relatively higher or lower percentages of disability or degrees of seriousness of the condition, but also by a showing of the appearance of a factor that is new in kind rather than in degree. 3 A. Larson, *supra* at § 81.33.

Although this language appears to speak to the situation confronting us here, an analysis of the cases cited by Larson in support of his statement demonstrates its inapplicability. In *Capitol Foundry v. Industrial Commission,* 27 Ariz.App. 79, 551 P.2d 69 (1976), *Moccia v. Eclipse Pioneer Division of Bendix Aviation, supra,* and *Bare v. State Compensation Director,* 148 W.Va. 760, 137 S.E.2d 435 (1964), employees sought to reopen previous awards for partial incapacity on the ground that they had experienced psychological disabilities, usually neuroses, stemming from the work-connected physical injuries that formed the bases of the prior awards. In such a case, the degree of incapacity ascribable to the physical injury

is not placed in issue and remains fixed by *force of the prior award.* The only question in such a case, assuming the employee can prove that a psychological condition has developed as a result of the work-related injury, is whether and to what degree the new condition has *further* impaired the employee's working capacity.

 In the case at bar, unlike the *Capitol Foundry, Moccia,* and *Bare* cases, the percentage of incapacity chargeable to the original physical injury *was* placed in issue and passed upon by the Commissioner who reduced it by twenty percent. Since no relevant evidence was ever introduced tending to show that Nelson's orthopedic condition had improved, the reduction was unwarranted.

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Case remanded to the Superior Court with instructions to remand to the Workers' Compensation Commission for dismissal of the employer's petition.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses, for this appeal.

POMEROY, J., sat at argument but participated no further.