**Hilton HAFFORD**

v.

**Guy E. KELLY, Jr. and Lumbermens Mutual Casualty Co.**

Supreme Judicial Court of Maine.

Argued Sept. 15, 1980.
Decided Oct. 16, 1980.

Rudolph T. Pelletier (orally), Madawaska, for plaintiff.

Stevens, Engels & Bishop, Jonathan W. Sprague (orally), Albert M. Stevens, Presque Isle, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GODFREY, Justice.

Employee Hilton Hafford appeals from a pro forma judgment of the Superior Court which affirmed a Workers' Compensation Commission decree granting a petition for review of incapacity brought by Hafford's employer, Guy E. Kelly, Jr., and ordering compensation for sixty percent partial incapacity.

In November of 1977, while employed as a woodsman in Allagash, Maine, Hafford suffered a work–related injury consisting of an acute lumbar strain and sprain. For one week following the injury Hafford received compensation for total incapacity.

On June 22, 1978, Hafford filed with the Industrial Accident Commission a petition for further compensation, claiming that he was then totally or partially incapacitated. Before any hearings were held on that petition, Hafford and his employer entered into an agreement stating that beginning April 20, 1978, Hafford would be compensated for "total incapacity." That agreement was executed on June 28, 1978, and was approved by the Workers' Compensation Commission on September 29, 1978. Because of the agreement, the Commission dismissed Hafford's petition for further compensation on October 5, 1978.

On June 13, 1979, Kelly filed with the Workers' Compensation Commission a petition for review of Hafford's incapacity. During the hearings on the petition for review, Hafford testified that when requested by the Maine Forest Service he had assisted in fighting forest fires by running a water pump, refueling trucks, or walking the fire lines. That work was only occasional. Hafford had no skills or training for employment other than work in the woods and felt that pain in his back and legs would preclude him from doing such work in the future. He had not looked for steady employment during the six months before the hearings.

Dr. John F. McGinn, a specialist in orthopedic surgery who had treated Hafford for his back pain, also testified at the hearings. Dr. McGinn first examined Hafford on May 9, 1978, after Hafford had become disabled but before the compensation agreement was executed. He examined him on three other occasions after execution of the agreement, namely, on July 11, August 22 and September 19, 1978. Dr. McGinn stated that Mr. Hafford's physical condition did

not change during the time he treated him. When the Commissioner inquired whether Hafford's capacity for work had increased since April of 1978, Dr. McGinn replied by saying that Hafford could now perform light to moderate work. However, Dr. McGinn testified further that his opinion concerning Hafford's capacity for work had been formed in May of 1978 and had not changed since then. In short, Dr. McGinn indicated that Hafford had partial capacity for work before and after the compensation agreement was executed and that his capacity had not changed.

On January 4, 1980, the Commissioner issued his decree concerning the employer's petition for review of incapacity. The Commissioner concluded that Hafford's capacity for work had increased since April 20, 1978, the date specified in the compensation agreement as the time when his total incapacity commenced. In the Commissioner's view, Hafford's capacity for work had increased to forty percent of his pre–accident ability. Accordingly, the Commissioner ordered that Hafford be paid compensation for sixty percent partial incapacity.

Hafford contends that the Commissioner made an error of law when he compared Hafford's current capacity for work with his capacity on April 20, 1978, the agreed–on date when his disability commenced, instead of comparing it with his capacity on June 28, 1978, the date when the compensation agreement was executed. Employer Kelly contends that the compensation agreement must be construed as a contract between employee and employer. Since the agreement stated that Hafford's total incapacity commenced on April 20, 1978, Kelly asserts that the Commissioner properly used that date in determining whether Hafford's work capacity had increased.

■ Where total incapacity has been established through a Commission–approved compensation agreement, on a petition for review of incapacity the employer has the burden of showing that the employee's incapacity has diminished since the time the agreement was executed. *Hamilton v. Dexter Shoe Co.*, Me., 402 A.2d 854,

855–56 (1979); *Nelson v. Town of East Millinocket*, Me., 402 A.2d 466, 468 (1979); *VanHorn v. Hillcrest Foods, Inc.*, Me., 392 A.2d 52, 54 (1978); *Dufault v. Midland–Ross of Canada, Ltd.*, Me., 380 A.2d 200, 204 (1977). Provided the agreement is later approved by the Workers' Compensation Commission, the extent of the employee's incapacity and the compensability of his injury become conclusively established when the agreement is executed. Once the agreement is approved it has the force of a final adjudication from the date of execution. *Dufault v. Midland–Ross of Canada, Ltd., supra*, at 203–06. "Only changes in circumstances occurring *after* the ... agreement count in support of making a change in compensation payments." *Id.* at 204. By restricting the scope of a review proceeding to changes occurring after the agreement, this Court seeks "to insure that a petition for review of incapacity can never serve as a tool for prying open matters already settled." *Nelson v. Town of East Millinocket, supra*, at 468. The Commissioner clearly made an error of law in using a date earlier than the time the agreement was executed as the point of comparison in determining whether Hafford's work capacity had increased.

■ This Court's reference in *Dufault* to construing compensation agreements as contracts does not affect our decision. Principles governing the interpretation of contracts serve only to illuminate what matters the agreement purported to settle. *Dufault v. Midland–Ross of Canada, Ltd., supra*, at 205. *See also Robbins v. Bates Fabrics, Inc.*, Me., 412 A.2d 374, 380 (1980). Such principles do not alter the force of the approved agreement as a virtual judgment. In this case, it was determined, in effect, by the compensation agreement that Hafford was totally incapacitated at the signing of the agreement on June 28, 1978. Hence, on review of incapacity, the employer was required to show a change in Hafford's disability after that date. That was not done.

■ Normally, we would remand the case with a direction to the Commissioner to apply to the record the legal principles

**54**

announced in this opinion. In the instant case, however, such action is unnecessary. The only comparative medical testimony produced before the Commissioner was that of Dr. McGinn, and the effect of his testimony was to show that neither Hafford's physical condition nor his capacity for work had changed since the compensation agreement was executed. Accordingly, we must remand the case with an order directing the Commissioner to reinstate Hafford's compensation for total incapacity.

The entry is:

Appeal sustained.

Judgment vacated.

It is ordered that employee Hafford be restored to compensation for total incapacity pursuant to the compensation agreement executed on June 28, 1978.

It is further ordered that employer Kelly pay to employee Hafford $550 for his counsel fees plus his reasonable costs of this appeal.

All concurring.