Linda L. DELOGE

v.

**FORSTER MANUFACTURING COMPANY, INC. and Fred S. James & Company of Maine, Inc.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1981.

Decided May 26, 1981.

Tanous & Beaupain, Dean A. Beaupain, Norman S. Heitmann, III, Millinocket, (orally), for plaintiff.

Mitchell & Stearns, Peter M. Weatherbee (orally), Bangor, for defendants.

Before WERNICK, GODFREY, NICH-OLS, GLASSMAN,* ROBERTS and CARTER, JJ.

WERNICK, Justice.

In this worker's compensation case the worker, Linda L. Deloge, has appealed from a pro forma judgment entered in the Superior Court (Penobscot County) affirming a decision made by the Worker's Compensation Commission on a petition for review of incapacity filed by the employer, Forster Manufacturing Company, Inc. Concluding that the worker was no longer entitled to compensation for total incapacity, the Commission awarded her compensation for a partial incapacity reflecting a 25% reduction of her capacity to earn.

We deny the appeal and affirm the judgment.

On April 25, 1979 while performing her assigned job, the worker caught the third and fourth fingers of her left hand in the moving chain of a bandsaw. Approximately three weeks later, on May 17, 1979, the worker and her employer executed an open-ended agreement (duly approved on June 4, 1979) which stated that the worker had "[a]mputated ends of 3rd & 4th fingers left hand" and called for her to be paid compensation for total incapacity to earn.

Six weeks after the execution of the agreement, the employer filed a petition for review of the worker's agreed upon total incapacity to earn. Hearings were held on November 1, 1979, and March 6, and 27, 1980, at which the only evidence presented regarding the physical disability of the worker was the testimony of Dr. John R. McGill. He had seen the worker six times in 1979 on: July 2, July 16, August 16 to perform surgery on her injured fingers, September 4, for post surgical care, November 19, and December 21. He saw her, too, on January 30, 1980. Dr. McGill's opinion was that the worker would have some degree of permanent physical disability, but that she had recovered the physical ability to use her injured hand to a point enabling her to resume the performance of manual work. No evidence was presented at the hearings by either the worker or the employer regarding the availability of remunerative work for one having the worker's degree of permanent physical disability.

■ The Commission found that the worker had a 25% physical disability. This was a finding of fact which we, discerning it to be supported by the evidence, treat as conclusive. *Curtis v. Bridge Construction Corp.*, Me., 428 A.2d 62 (1981).

The worker's position on appeal does not take issue with the conclusiveness of the Commission's factual finding of a 25% *physical disability*. Rather, the worker's contention is that the evidence was insufficient to support the ultimate determination of the Commission that the employer had satisfied its ultimate burden of proof to establish that the worker's *incapacity to earn* had changed from total to partial. The Commission must be held to have erred in this respect, says the worker, because the employer had failed to present competent evidence showing either (1) the *physical disability* of the worker as of May 17, 1979, the date of the execution of the approved agreement for payment of compensation of total incapacity, or (2) the availability in the market-place of remunerative work for the worker physically disabled as she then was.

In the recent cases of *Hafford v. Kelly*, Me., 421 A.2d 51 (1980); *Haney v. Lane Construction Corp.*, Me., 422 A.2d 1292 (1980) and *Curtis v. Bridge Construction Corp.*, Me., 428 A.2d 62 (1981) we clarified that *by its very nature* any approved agreement for payment to a worker of compensation for total incapacity to earn *necessarily* determines, with the same conclusive effect as if it were a Commission adjudication, the governing applicability, as of the date of the execution of the agreement, of at least the following two propositions regarding the worker's incapacity to earn: (1) it was

---

* GLASSMAN, J., sat at argument and participated in conference but died before the opinion was adopted.

total; and (2) it resulted from an injury,—i.e., an impairment in *at least some* degree of the worker's *physical ability* to perform work,—sustained in the course, and arising out, of the worker's employment.

In the same three cases we further stressed that in any subsequent proceeding for review of the extent of the worker's incapacity to earn, the integrity of an approved agreement for payment of compensation for total incapacity, as *necessarily* and *conclusively* having determined the above stated two propositions, must be maintained intact.

Simultaneously, we also took pains to clarify a negative point regarding an approved agreement fixing the extent of a worker's incapacity to earn as total. Merely by its inherent nature, without more, such an agreement does not necessarily fix the worker's *physical disability* as having been total when the agreement was executed, since the worker's *total incapacity to earn* could have resulted from a *partial physical disability* coupled with the unavailability in the market-place of any remunerative work for a worker thus physically disabled. *See Curtis, supra,* at 64, and *Haney, supra,* at 1294, 1295. Hence, it cannot be taken as *a given* that a particular approved agreement to pay compensation for total incapacity to earn must have determined conclusively that at the time of the execution of the agreement the worker's physical disability was total.

This being so, in any subsequent proceeding for review of the extent of a worker's incapacity to earn it would be error: (1) to assume *automatically, solely* on the basis of existence of an approved agreement to pay compensation for total incapacity, that it was conclusively determined that the worker's *physical disability* was *total* when the agreement was executed; and (2), therefore, to relieve the employer of the obligation to come forward in the first instance (as an incident of the employer's ultimate burden of proof) with competent and adequate *evidence* of the extent of the worker's *physical disability* as of the date of the execution of the agreement. So to proceed would be to impair the integrity of the approved agreement as a conclusive determination equivalent to an adjudication. In this context, the impairment would be the improper or undue *enlargement* of the conclusive scope of the agreement, in contrast to the improper or undue *diminution* of conclusive effect shown for example, in *Hafford v. Kelly, supra,* where the

> "Commissioner . . . us[ed] a date earlier than the time the agreement was executed as the point of comparison in determining whether . . . [the worker's] work capacity had increased." *Id.,* at 53.

In either situation the governing principle is the same: in a subsequent proceeding the integrity of the approved agreement as a conclusive determination must be maintained intact. Its conclusive scope is to be neither diminished—by the *re*-litigating of any matters the agreement had conclusively determined, nor expanded—by dispensing with a *requisite litigation*, involving the presentation of competent and adequate evidence, of matters that the approved agreement had *not* conclusively determined.

To avoid this latter error, of improperly expanding the conclusive scope of an approved agreement, it is generally required that, to prevail, an employer seeking review of a worker's incapacity to earn fixed as total by an approved agreement must come forward in the first instance with competent and adequate evidence showing the extent of the worker's physical disability not only as put in issue by the petition for review but also as of the date of the execution of the agreement. Only such evidence enables the fact-finder to discharge his prerogative, and responsibility, to arrive at a comparative finding whether or not the worker's physical ability to perform work had improved *after* the date the agreement was executed.[1]

---

1. Usually, the fact-finder must concentrate on whether the employer has shown such improvement in the worker's physical ability to perform work, since the employer rarely presents evidence of the market-place availability of work.

Having in mind the foregoing principles explained in our recent decisions, we evaluate the worker's claim in the case at bar, her contention that the employer cannot prevail because it failed to present evidence showing the extent of the worker's physical disability as of the date of the execution of the approved agreement (even though the employer had presented evidence showing the extent of the worker's physical disability in relation to the petition for review).

 Although, as we have stressed, any approved agreement for payment to a worker of compensation for total incapacity to earn does not *of necessity* conclusively determine the actual extent of the worker's physical disability as of the time of the execution of the agreement (beyond establishing that there was *some* such disability), a *particular* approved agreement may happen to contain factual information bearing on that matter. Wherever there . is such factual content stated in a particular agreement, the facts thus stated, because agreed upon, have the legal effect of being *stipulations.* In such instance, then, the facts that may happen to be stated in the agreement, by their nature as stipulations, will be competent *evidence* in any subsequent proceeding for the review of the worker's total incapacity in which the approved agreement has been made part of the record.

Such is the situation in the case at bar. The approved agreement was in evidence, and it contains the factual information that the worker "[a]mputated ends of 3rd & 4th fingers left hand" when she was "taking away from bandsaw" her "hand [which] was too close to the chain and sprocket." This evidence, in combination with Dr. McGinn's appraisal of the physical condition of the worker, made after he had performed extensive remedial surgery on her injured left hand, *see Hamilton v. Dexter Shoe Co.,* Me., 402 A.2d 854, 856 (1979), was adequate to support the Commission's finding of fact that after the date of the execution of the agreement the worker's physical ability to perform remunerative work had improved.

In this case, then, the employer's showing of such improvement in the worker's physical ability to work satisfied the employer's ultimate burden of proof to show that the worker's incapacity to earn had diminished from total to partial. The reason is that the worker failed to meet her burden of coming forward with evidence as to market-place availability of work for one in her improved physical condition, a burden the worker bore once the employer had shown that the worker's physical ability to perform work had improved. *Ibbitson v. Sheridan Corp.,* Me., 422 A.2d 1005 (1980).

The entry shall be:

Appeal denied; pro forma judgment of the Superior Court affirmed.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00 together with her reasonable out-of-pocket expenses for this appeal.

All concurring.