Scott WALLACE

v.

CHAPLIN CADILLAC–OLDS, INC.,
et al.

Supreme Judicial Court of Maine.

Argued June 8, 1981.

Decided Aug. 7, 1981.

**WERNICK, Justice.**

The employer Chaplin Cadillac-Olds, Inc. and the worker Scott Wallace executed, on February 1, 1979, an open-ended agreement (later duly approved) calling for the worker to be paid compensation for total incapacity to earn resulting from a work-related injury sustained by the worker on December 4, 1978. The agreement described the worker's injury as a "twisted right elbow" caused by the worker's having "twisted [his] arm while cleaning snow from cars."

On June 4, 1979 the employer filed a petition for review of the worker's incapacity. After hearing, the Commission decided that the worker's entitlement to payment of compensation benefits be terminated as of January 31, 1980.[1]

The worker has appealed from the pro forma judgment of the Superior Court reflecting the Commission's termination of his compensation benefits. We sustain the appeal, set aside the pro forma judgment and remand to the Commission for further proceedings.

As we interpret the Commission's decision, it presents two grounds, as alternatives, for terminating compensation benefits. We find each of them untenable.

The first ground, that the worker "has regained full capacity for work", was stated as follows:

"'Tennis elbow'[2] is a quite common condition incurred by many people, including this Commissioner. Based on the evidence submitted, I find that the employee's condition, rather than creating disability from work, creates nagging discomfort especially after a quick or improper movement of the arm. . . . [A]lthough this employee may have some nagging discomfort from time to time, his condition does not disable him from work . . . ."

Richardson, Tyler & Troubh, David O'Brien, Portland (orally), for plaintiff.

Norman & Hanson, Stephen W. Moriarty (orally), Robert F. Hanson, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

1. An initial decision to that effect was issued under date of January 31, 1980. It was not mailed to the parties until February 6, 1980. On February 15, 1980, pursuant to 39 M.R.S.A. § 99, the worker requested the Commission to make findings of fact and conclusions of law. On November 17, 1980 the Commission issued a decision stating findings of fact and conclusions of law and ordering that the "decree of January 31, 1980 stands" and "[c]ompensation benefits are hereby authorized to be terminated as of the date of that decree."

2. The injury described in the agreement to pay compensation as a "twisted right elbow" was identified by the medical evidence as "lateral epicondylitis (tennis elbow)."

This language strongly suggests that the Commissioner may have agreed with the opinion expressed by Dr. John W. Barrett: "tennis elbow" should not be considered "an on-the-job injury"; rather, it should be characterized as "as aggravation by the repeated motions of the particular occupation of the day."

■ Were this the Commissioner's approach, it was error. In this proceeding the Commissioner was precluded from deciding that the at-work onset of "tennis elbow" suffered by the worker on December 4, 1978 had not been a work-related injury at all. That matter was conclusively determined, for the purposes of subsequent proceedings, by the February 1, 1979 agreement to pay compensation. *Deloge v. Forster Mfg. Co. Inc.*, Me., 429 A.2d 1012 (1981); *Curtis v. Bridge Construction Corp.*, Me., 428 A.2d 62 (1981); *Haney v. Lane Construction Corp.*, Me., 422 A.2d 1292 (1980); *Hafford v. Kelly*, Me., 421 A.2d 51 (1980).

■ Even if, on the other hand, the Commissioner's intended approach was to recognize, rather than to deny, that the onset of the worker's "tennis elbow" on December 4, 1978 had been a work-related injury, the Commissioner nevertheless committed error by deciding that the evidence submitted justified the findings that (1) as a general proposition, such injury "rather than creating disability from work, creates nagging discomfort", and (2) in this particular instance "[a]lthough ... [the worker] may have some nagging discomfort from time to time, his condition does not disable him from work . . . ."

The evidence did not support either of these findings. None of the medical evidence raised any question as to the correctness of the general proposition that "tennis elbow" can give rise to physically disabling pain that recurrently can impair a person's ability to work remuneratively.[3] Moreover, the affirmative and undisputed medical evidence provided by Dr. Patrick Dowling, was that as of December 18, 1979—less than

seven weeks before January 31, 1980, the effective date of the Commission's order of termination of compensation benefits—this particular worker, Scott Wallace, was in fact physically disabled to such extent that, "for approximately one year's time", his "activity limitation" should be "40 lbs. lifting and no repeated lifting or gripping with the right arm."

■ We also reject what appears to be the Commission's alternate reason for *terminating* the worker's compensation benefits as of January 31, 1980—that the worker had failed to meet his "burden of *demonstrating* any relationship between his failure to find work and his medical condition." (emphasis added)

We agree that in the face of the evidence presented by the employer of *improvement* in the physical ability of the worker to perform work, the worker had failed to meet his burden of coming forward with evidence to show that he was entitled to be paid compensation for *total* incapacity to earn because his work-related injury continued to make remunerative work unavailable to him in the market-place. It is, therefore, without consequence whether, as suggested by his use of the word "demonstrating", the Commissioner may have committed the error of placing on the worker the ultimate burden of proof; in any event, the failure of the worker to meet his *burden of production* defeats his entitlement to be paid compensation for *total* incapacity to earn. *Ibbitson v. Sheridan Corp.*, Me., 422 A.2d 1005 (1980).

■ From this conclusion, however, it does not follow that the worker also loses entitlement to be paid compensation for *partial* incapacity to earn. To the contrary, the worker must be held entitled to be paid compensation for partial incapacity to earn, where, as here, in light of what we have already decided and as the starting point of our consideration of the Commissioner's alternate rationale of decision, the evidence

---

**3.** Of course, the Commissioner's personal experiences with "tennis elbow", to which he referred in his opinion, are not evidence.

of record establishes that the work-related physical disability of the worker had not ended but had diminished. The reason is that the worker bears a burden of production *only if*, in the face of the employer's initial showing that his physical disability to work has lessened, the worker nevertheless claims continued entitlement to be paid compensation for *total* incapacity to earn. The worker has no such burden of production, however, where, on the employer's petition for review of incapacity and after the employer's initial showing of improvement in the physical ability of the worker to perform work, the ultimate issue to be decided is the extent of the worker's *partial* incapacity to earn, if any. Regarding this issue of partial incapacity, an employer petitioning for review of the worker's incapacity, being the moving party, bears the ultimate burden of proof on all the evidence. Such employer, therefore, if he is to defeat the worker's entitlement to be paid compensation for *partial* incapacity to earn, must assure that the evidence of record establishes as more probable than not that the partial work-related physical disability the worker still suffers is not causing an unavailability to him of remunerative work in the market-place that eliminates such wage loss to the worker as would justify paying him some amount of worker's compensation. *Fecteau v. Rich Vale Construction, Inc.*, Me., 349 A.2d 162 (1975); *see Matthews v. Boss*, Me., 389 A.2d 32, 35 (1978).

Hence, since the employer presented no such evidence in this case but proved at most, as we have decided, only that there had been a diminution, not a termination, of the work-related physical disability of the worker to perform remunerative work, the employer had failed to meet its ultimate burden of proof on all the evidence to show that the worker's entitlement to compensation should end. On all the evidence, the worker remained entitled to be paid compensation for partial incapacity to earn, and it was the obligation of the Commission to determine the extent of that partial incapacity in terms of weekly compensation.

Here, then, neither of the two grounds on which the Commissioner may be taken to have rested his decision terminating compensation benefits to the worker as of January 31, 1980 supports that decision.

The entry shall be:

Appeal sustained;

pro forma judgment of the Superior Court vacated;

case remanded to the Workers' Compensation Commission for further proceedings in accordance with the opinion herein.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.