Evelyn SMITH

v.

YOUNG WOMEN'S CHRISTIAN
ASSOCIATION

and

New Hampshire Insurance Company.

Evelyn SMITH

v.

NACHI BEARING COMPANY

and

Employers Mutual Liability Company.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1981.

Decided Jan. 5, 1982.

Joseph L. Bornstein (orally), Portland, for plaintiff.

Preti, Flaherty & Beliveau, Keith A. Powers (orally), Portland, for YWCA and N. H. Ins. Co.

Norman & Hanson, Stephen W. Moriarty (orally) and Robert F. Hanson, Portland, for Nachi Bearing Co. and Employers Mut. Liability Co.

Before McKUSICK, C. J., and GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Judge.

The employee, Evelyn Smith, filed with the Workers' Compensation Commission four Petitions for Award of Compensation, two against Nachi Bearing Co. (Nachi), and two against the Young Women's Christian Association (YWCA). By agreement of the parties, these petitions were consolidated for hearing before the Commissioner. The Commissioner denied both petitions against Nachi, but granted the petitions against YWCA, finding total disability from September 28, 1978 until June 30, 1980, and 50% partial disability thereafter. The YWCA and Smith each requested further

findings of fact and conclusions of law pursuant to 39 M.R.S.A. § 99, and each submitted proposed findings. The Commissioner denied both requests, stating that his original decree was adequate. After obtaining a pro forma decree from the Superior Court, the YWCA appealed, and Smith cross-appealed. We vacate the judgment and remand to the Commission for further findings of fact and conclusions of law.

Smith testified that she first injured her back while working for Nachi. She began working there in August 1977, and her duties included lifting bins of ball-bearings that weighed up to 50 lbs. After three weeks on the job, Smith experienced back pain spreading down her legs upon lifting. Smith claimed to have reported this condition to several people at Nachi, including her supervisor and a fellow employee who dispensed aspirin. On October 28, 1977, Smith was laid off from work. Smith saw Dr. Bonjour on November 1, and entered the hospital for back surgery two days later. Dr. Brinkman removed a large extruded disc fragment at level L5–S1. In January 1978 Smith resumed work at Nachi, but left after two days because of renewed pain. In September 1978, Smith began working as an after-school aide at the YWCA. Smith testified that on September 28, while supervising children, she slipped and half fell in the shower. Later that week a child grabbed Smith's neck from behind and pulled her backwards, causing pain in her back and legs. Smith left work, saw Dr. Bonjour on October 5, and underwent surgery on October 18, 1978. A recurrent disc fragment was removed from the same location in Smith's back as in the first surgery.

Smith testified that after surgery she suffered continued pain, could not bend, and could not stand or sit for long periods. She attempted to work in July 1980 boning chicken, but quit after two days because the necessary periods of standing were too painful.

Testimony of several doctors was admitted. Dr. Bonjour's notes indicate that Smith did not attribute any of her injuries to her work until the spring of 1978, when she asked Bonjour to alter his notes to reflect that her 1977 injury was work-related. (Smith denied that she made such a request.) Dr. Brinkman's testimony was that in November 1977 Smith reported intermittent back pain of ten years duration, increasing in severity the prior two to three months, corresponding with Smith's job (which Dr. Brinkman believed was working for an optical company). On August 8, 1979, Smith first informed Dr. Brinkman that both her disc injuries were work-related. Both doctors believed Smith had a gradual degenerative disc-disease. Dr. Brinkman, though considering Smith to be a "poor historian," stated that the YWCA incident in which a child grabbed Smith, assuming it happened, was to a reasonable medical certainty related to her second extruded disc fragment. Dr. Parisien, based upon Smith's history as told to him on May 17, 1979, and on medical records of Drs. Brinkman and Bonjour from November 1977, testified that Smith's work at Nachi caused her first extruded disc fragment, and the child-grabbing incident at the YWCA caused the second extruded fragment.

In his original decree, the Commissioner made the following findings and conclusions:

—Smith underwent disc surgery on November 8, 1977.

—Smith was totally disabled from November 8, 1977 to January 1, 1978.

—Smith was 50% disabled from January 4, 1978 to June 30, 1978.

—Smith underwent lumbar surgery on October 18, 1978.

—Smith was totally disabled from October 18, 1978 to June 30, 1980, and 50% disabled thereafter.

—Smith did not give Drs. Bonjour or Brinkman any history of work activity precipitating her back or leg discomfort in November 1977. The only histories which allege a work activity precipitating low back and leg pain are in the histories of two other doctors (who did not see Smith before December 1978).

—Smith failed to prove any work activity on or before January 24, 1978 that in any way precipitated, aggravated or accelerated the onset of low back and leg pain.

—Smith failed to prove that any work at Nachi changed the underlying pathology of Smith's back; thus Smith suffered no "injury" as a matter of law.

—Smith failed to prove compliance with 39 M.R.S.A. § 63 (notice) with regard to Nachi.

—Smith sustained both alleged incidents at the YWCA.

—The YWCA received timely notice of both incidents.

—The two incidents aggravated Smith's underlying back condition, and resulted in a change in the underlying pathology of her back.

The Commissioner stated that Smith's credibility was the essential and crucial issue. He further noted:

From my experience as a practicing attorney in Maine and most recently as a Commissioner of the Commission, I frequently come into contact professionally with Dr. Brinkman [and to] a lesser degree ... with Dr. Bonjour.... I know both men, especially Brinkman to be meticulous and thorough medical historians. I find it extremely significant, in deciding this case, that neither doctor who examined the employee within one week of the alleged injurious work activity at Nachi Bearing had any history of any work activity which related to the back and leg symptoms.

Both the YWCA and Smith submitted proposed findings of fact and conclusions of law.

■■ The Commissioner is under an affirmative duty to file findings of fact and conclusions of law upon the request of a party. 39 M.R.S.A. § 99; *Gallant v. Boise Cascade Paper Group*, Me., 427 A.2d 976, 977 (1981). Specific findings permit stricter appellate review. Rather than assuming that the Commissioner made particular findings of fact or applied certain legal

principles, an appellate court can review the actual findings made and the legal principles actually applied. *Gallant*, 427 A.2d at 977. Furthermore, section 99 anticipates that upon making specific findings the Commissioner may reconsider, revise or reverse his original decision. Thus, possible error can be corrected at the Commission level. It was with that function in mind that we stated in *Coty v. Town of Millinocket*, Me., 423 A.2d 524, 527 (1980):

Any commissioner to whom a section 99 request is made should permit or even require counsel, particularly counsel for the prevailing party, to submit proposed findings for him to consider in responding to that request. Only thus can the commissioner obtain the full benefit of the adversary system in carrying out the responsibilities imposed upon him by section 99.

While the parties should not view the submission of proposed findings as an opportunity to *relitigate* the case, *Leo v. American Hoist & Derrick Co.*, Me., 438 A.2d 917, 926 (1981), proposed findings should be viewed as aids for the Commissioner's use in reexamining his original decision.

■■ Here, both parties submitted proposed findings of fact and conclusions of law. Thus, unless the Commissioner's original decree was sufficiently detailed to allow the strict appellate review to which the parties are entitled, we must remand for further findings.

The Commissioner's decree with respect to the YWCA does not explain upon what basis the Commissioner found that as of June 30, 1980, Smith had improved from being totally disabled to 50% disabled. With respect to Nachi, the finding that Smith failed to give notice to Nachi is unexplained, and it is not clear upon what basis the Commissioner concluded that Smith had failed to prove that her work activity at Nachi precipitated or aggravated the onset of her back and leg pain. Nor can we be certain of the Commissioner's understanding of the legal concept of aggravation, a concept whose parameters "are not

free from doubt." *Gallant,* 427 A.2d at 978. While the Commissioner stated that the employee's credibility was the crucial issue, he did not explicitly resolve that issue.

██ Furthermore, to the extent that the Commissioner gave weight to Dr. Brinkman's and Dr. Bonjour's testimony to the detriment of Smith as a result of the Commissioner's *personal* experience with both doctors outside of the instant case, he committed error. We have recognized that the Commissioner may appropriately rely upon his developed general expertise in evaluating the credibility of witnesses and in assessing evidence in written form. *Dunton v. Eastern Fine Paper Co.,* Me., 423 A.2d 512, 514 (1980). However, it is inappropriate for a Commissioner to rely upon his personal prior contacts with individual witnesses. Where the Commissioner relies upon such personal experience, his findings will be, in part at least, grounded upon evidence without "full opportunity for comment, explanation and refutation." *See White v. Monmouth Canning Co.,* Me., 228 A.2d 795, 800 (1967).

Upon remand, should the Commissioner determine that Smith is entitled to compensation from both Nachi and the YWCA we note that he may be required to make findings upon the issue of apportionment.

The entry is:

Pro forma decree vacated.

Remanded to the Workers' Compensation Commission with directions for further proceedings consistent with the opinion herein.

Further ordered that the employers pay to the employee $550 for her counsel fees plus her reasonable out-of-pocket expenses for this appeal, one-half to be paid by each employer.

All concurring.