Edward SOCKABASIN

v.

INDIAN TOWNSHIP TRIBAL GOVERN-
MENT and Liberty Mutual
Insurance Company.

Supreme Judicial Court of Maine.

Argued March 5, 1982.

Decided March 30, 1982.

Fletcher & Foster, John P. Foster (orally), Eastport, for plaintiff.

Rudman & Winchell, Bruce Mallonee (orally), Paul W. Chaiken, Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and WATHEN, JJ.

WATHEN, Justice.

The employee, Edward Sockabasin, appeals from a pro forma judgment of the Superior Court, Washington County, confirming a decision of the Worker's Compensation Commission decreasing the employee's compensation from 100% to 50% disability following hearings on the employer's petition for review of incapacity. We reverse the judgment.

The employee sustained a compensable back strain on October 2, 1978, while performing maintenance work for his employer the Indian Township Tribal Government. On January 30, 1979, the employee and employer executed an "Agreement Between Employer and Employee As To Payment of Compensation" for total incapacity. This agreement was approved by the Commission on February 12, 1979, and payments were made accordingly until September 9, 1979, when employee agreed to return to work for the employer as caretaker of the tribal dump. An "Agreement to Discontinuance of Compensation" was executed by the parties and subsequently approved by the Commission.

The employee performed his duties as caretaker for several months until increasing back pain forced him to stop working. A new agreement between the employee and employer was executed on March 21, 1980. This agreement, which provided for payment of total disability benefits, was also approved by the Commission. Payments by the employer were resumed.

On October 28, 1980, the employer filed with the Commission a Petition for Review of Incapacity, pursuant to 39 M.R.S.A. § 100 (1978),[1] seeking to modify its duty under the March 1980 agreement. Hearings were held in April and May of 1981. Dr. John McGinn, Dr. Richard Mazzei, and the employee testified concerning the employee's disability.

Dr. McGinn, an orthopedic surgeon, testified that he had examined the employee before and after a spinal fusion was performed in late 1978. His examinations included three during 1979 and 1980. He stated that at the time of hearing the employee could perform light to moderate work but should avoid heavy lifting and bending. According to Dr. McGinn, the employee's fusion was solid and the neurological exams normal at all times after May 17, 1979, and his condition was more or less stable between March and December 1980.

---

1. At all times relevant to this case the statute provided in part:

    While compensation is being paid ... under any agreement, award, or decree, the incapacity of the injured employee due to the injury ... may from time to time be reviewed by a single commissioner ... upon the grounds that such incapacity has subsequently ... diminished or ended....

    39 M.R.S.A. § 100 (1978).

He testified that the employee's current back pain was "due to a chronic low back strain due to weak abdominal musculature and the prominence of the abdomen." In April 1980, the employee was experiencing some related pain in his left leg.

A second orthopedic surgeon, Dr. Richard Mazzei, testified that he had examined the employee in October 1979, April 1980, and January 1981. The employee consistently complained of back pain and also complained once of leg pain which improved in April 1980. During cross-examination, the doctor agreed that the back pain petitioner was experiencing neither increased nor decreased from one examination to the next. He testified that no significant change in the employee's physical condition or neurological picture as established by previous exams was evident in January 1981. He agreed with Dr. McGinn that the employee could perform light work, and stated that in his opinion the employee's work capacity had remained the same from 1979 to 1981.

The employee testified that he is unable to perform many activities without pain. He did not feel that his condition had improved since March of 1980. He stated that his efforts to find employment had been unsuccessful.

On June 26, 1981 the Commissioner issued his decision reducing the employee's compensation to 50% partial disability. He found that

> Mr. Sockabasin has a capacity to work not involving repetitive heavy lifting, bending or twisting. We estimate his work capacity to be 50% of his preaccident capacity. This capacity would be further increased if he lost weight and reconditioned his abdominal muscalature. Mr. Sockabasin testified as to his efforts to find employment but we do not think that this evidence is sufficient in quality

and quantity to require the employer to assume its burden of showing that there is work available which Mr. Sockabasin can perform, therefore we do not deem him to be totally disabled because he cannot obtain suitable work.

The employee subsequently moved for specific findings of fact and conclusions of law.[2] The Commissioner then stated that he found the employee's back condition had improved since the March 21, 1980, agreement was executed and that he relied on the testimony of Dr. McGinn in so finding. The employee timely petitioned for a pro forma decree and filed a notice of appeal with this Court.

The employee contends on appeal that there is no competent evidence in the record supporting the Commissioner's finding that his back condition had improved subsequent to March, 1980. We have held in prior cases involving petitions for review of incapacity that the Commissioner's findings of changed capacity must be supported by competent comparative medical evidence before we can affirm an order modifying the employee's benefits. This rule has been succinctly stated:

> In a petition for review of incapacity, the employer has the burden of proving that the effects of a compensable injury have diminished or ended. ... When prior compensation for total incapacity has been based on an approved agreement that does not specify the nature and degree of the worker's disability ... the employer must carry that burden, first, by introducing evidence of the extent of the worker's disability on the date of execution of the agreement and, second, by introducing comparative evidence showing that the worker's medical condition has subsequently improved.

*Smith v. Dexter Oil Co.*, Me., 432 A.2d 438, 440–41 (1981).

---

2. The motion, made pursuant to 39 M.R.S.A. § 99 (1978), requested responses to specific questions rather than requesting the Commission to adopt proposed findings. For example, the employee asked "whether a finding was made that the employee's back condition improved *subsequent* to the March 21, 1980 agreement and, if so, what specific evidence

was the basis for such a finding." Requests for findings of fact are not the equivalent of interrogatories propounded to the Commission, and should not be treated as such. The motion should provide the Commissioner with an opportunity to elucidate fully the pertinent findings of fact and conclusions of law on which his order was based.

The employer in the instant case did introduce evidence of the employee's physical condition on March 21, 1980 and subsequent to that date, unlike the employers in *Haney v. Lane Construction Corp.*, Me., 422 A.2d 1292 (1980) (record devoid of evidence of physical condition before or at time of execution of agreement), and *Smith v. Dexter Oil Co., supra*, (no medical evidence comparing claimant's condition at time of execution to condition after execution of the compensation agreement). The Commissioner stated that he did apply the comparative medical evidence rule. The issue in this case is simply whether there exists competent medical evidence to support the Commissioner's finding of diminished incapacity.[3]

The employer contends that Dr. Mazzei's testimony that the employee's leg pain had improved in April 1980 is competent evidence sufficient to support the Commissioner's decision. However, the Commissioner expressly stated that his finding of improved work capacity was based on the testimony of Dr. McGinn who repeatedly testified that the employee's condition had remained the same during the period in question. We need not decide whether the Commissioner's reliance on Dr. McGinn's testimony limits our review to that testimony. Even including Dr. Mazzei's testimony, the evidence is unquestionably contrary to the Commissioner's finding. Dr. Mazzei stated that there had been no "significant" change in the employee's condition, suggesting that the improvement in leg pain had little, if any, bearing on the doctor's evaluation of the employee's overall physical and neurological status. On the crucial issue of work capacity, the doctor agreed that the employee's ability to perform work activities had remained essentially the same from one examination to another. The record does not permit the conclusion that the improvement in leg pain led to improved work capacity. The evidence does not support the Commissioner's conclusion that the employee's work capacity had increased by 50%. The employer failed to carry its burden of proof on the critical issue of change in incapacity, and therefore we must reverse the Commissioner's decision.

The entry is:

Appeal sustained.

Judgment reversed.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.

---

**3.** In *Haney v. Lane Construction Corp.*, Me., 422 A.2d 1292, 1295 (1980), we noted that an agreement for total incapacity may be based on (1) total physical disability, or (2) partial physical disability coupled with a recognized inability, as a result of the disability, to find suitable employment in the community. The *Haney* opinion may suggest that different evidence is required in a petition for review of total incapacity based on partial physical disability rather than total physical disability. The record in this case contains a copy of the agreement which does not specify the cause of the total incapacity. The record is devoid of any evidence which might suggest the basis of the agreement. For this reason, we have accepted the assumption, evident in both parties' briefs, that the agreement was based on total physical disability and we therefore apply the previously articulated requirement that the employer present comparative medical evidence of a change in physical disability. *But cf.* 39 M.R. S.A. § 100(2) (Supp. 1981–1982) (effective date September 18, 1981; "On the first petition for review brought by a party . . . evidence of the employee's medical condition at the time of an earlier determination or approved agreement is relevant only if it tends to prove the present degree of incapacity.")