**Janice LOWE**

v.

**C. N. BROWN CO. and Commercial Union Co.**

Supreme Judicial Court of Maine.

Argued March 12, 1982.

Decided Aug. 13, 1982.

Elizabeth A. Marean (orally), Joseph L. Bornstein, Portland, for plaintiff.

Norman & Hanson, Stephen W. Moriarty (orally), John M. Wallach, Portland, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

VIOLETTE, Justice.

The employee in this worker's compensation case, Janice Lowe, appeals from a pro forma decree entered in Superior Court, Cumberland County, affirming an order of the Worker's Compensation Commission (WCC) denying her Petition to Determine Extent of Permanent Incapacity and granting the employer's Petition for Review of Incapacity. The commission found that the employee was no longer disabled and therefore not entitled to compensation benefits. The WCC also found that the employee has not sustained any permanent loss of the usefulness of the physical function of her shoulder. We affirm.

## I.

On October 20, 1978, Janice Lowe, while working as a gas station attendant for C. N. Brown Company, fell and injured her shoulder. Osteopathic care and physical therapy proved ineffective in reducing the employee's shoulder pain and swelling. On November 22, 1978, the employee and C. N. Brown Co. executed an agreement providing for payment of benefits for total incapacity resulting from her injuries on October 20. This agreement was properly approved by the WCC.

In mid-December, 1978, Ms. Lowe consulted Dr. Margaret Millard, who became her regular physician and later testified at the hearing held in this case. At this hearing, Dr. Millard stated that she had diagnosed the employee's condition as "tendonitis due to overstrain of the muscles during her fall . . . ." She testified that she had advised Ms. Lowe to keep her arm in a sling and avoid using it altogether. Repeated electrostimulation treatments performed at Millard's office relieved the employee's pain completely. The doctor also testified that as of April, 1979, Ms. Lowe was symptom

free and displayed no objective signs of organic pathology. However, she stated that she had warned the employee that "she wouldn't be able to use her arm, because it [the pain] would come back again if she did," since tendonitis has a tendency to recur "when the extremity is used in a normal way."

On April 20, 1979, the employer filed a Petition for Review of Incapacity. On May 23, 1979, the employee filed a Petition to Determine Extent of Permanent Impairment. One hearing for both petitions was held on November 28, 1979.

At the hearing, Dr. John Barrett, an orthopedic surgeon testified that he had examined Ms. Lowe on March 27, 1979. In his opinion, she had suffered a strain of the right rotator cuff of the shoulder, but on the date of his examination he could find "no evidence of organic disease or pathology." He stated that he did not believe Ms. Lowe was suffering from any permanent physical impairment and that he would not place any physical restrictions on her work activity.

Dr. Millard had occasion to re-examine the employee in October 1979 when Ms. Lowe complained of renewed pain after she had helped a friend stack wood. Dr. Millard testified at the hearing that the pain was due exclusively to overuse of the arm. When asked about permanent impairment, the doctor testified that the employee had lost fifty percent of the usefulness of the physical function of her arm.

The employee also testified at the hearing on the two petitions. She stated that her shoulder aches dully all the time, and that she takes aspirin every four hours for the pain. She testified that she cannot lift her arm much higher than ninety degrees.

On January 30, 1980, the Commission issued a decree granting the employer's petition, ordering termination of compensation as of January 30, 1980, and denying the employee's petition. The employee seasonably moved for further findings of fact and conclusions of law. The Commissioner denied this motion, and the employee appealed the ensuing pro forma decree entered in Superior Court. This appeal was the subject of our decision in *Lowe v. C. N. Brown Co.*, Me., 431 A.2d 1307 (1981), in which we found that the Commission had erroneously denied the employee's motion, and so vacated the judgment and remanded the case to the Commission. The Commission issued on September 1, 1981, a four page opinion detailing the evidence and specifying its findings.

In its findings, the Commission stated that it found that the employee was no longer disabled as a result of her October 20, 1978 injury, and that any injury she sustained because of stacking wood was not causally related to the original compensable injury. With respect to the employee's petition, the Commission found that "the employee . . . failed in its burden of demonstrating any permanent loss of physical function to the employee's upper extremity" and found "as a fact that there [had] been no such loss of function."

The employee has seasonably appealed the pro forma decree entered in Superior Court affirming the Commission's decision.

## II

■ The employee contends on appeal that there exists no competent evidence on the record to support the Commission's decision that the employee was no longer incapacitated. The employer had the burden of proving that the employee's incapacity for work had diminished. Proof of diminished incapacity is usually established by comparative medical evidence which is evidence comparing the medical condition of the employee at the time the compensation agreement was executed with her condition at the time of the petition for review. *See Haney v. Lane Constr. Co.*, Me., 422 A.2d 1292 (1980); *Hafford v. Kelly*, Me., 421 A.2d 51 (1980).

■ The employee argues that the only comparative medical evidence presented be-

low, *i.e.* Dr. Millard's testimony, indicated that the employee's work capacity had not changed. However, this Court has recently held that where the employer seeks to meet its burden of proof with evidence showing that the worker no longer is disabled as a result of a work-related injury, comparative medical evidence of the employee's condition need not be presented before a finding of full capacity may be upheld. *Curtis v. Bridge Constr. Corp.*, Me., 428 A.2d 62 (1981). The employer in this case introduced the testimony of Dr. Barrett who stated essentially that he found no disability and would not restrict the employee's work activities. Since this evidence was of the type contemplated by the Court in *Curtis*, the employer did not have to present comparative medical evidence in order to meet its burden of proof.

■ We further find that Dr. Barrett's testimony was competent evidence supporting the Commission's finding of fact that the employee was no longer disabled. We therefore affirm the Commissioner's decision that the employee was no longer entitled to payment of compensation.

### III

The employee also contends on appeal that the Commission erred in denying her Petition to Determine Extent of Permanent Impairment. She argues first that the Commission applied an erroneous rule of law, and second that the Commission's reliance on Dr. Barrett's testimony was arbitrary and capricious.

Under the Workers' Compensation Act, an employee may petition for scheduled benefits for a particular injury which is a permanent impairment. Section 56 of Title 39 provides for a lump sum payment to an employee who sustains one or several of a number of injuries to a certain part of his body. Such injuries involve loss of a member of the body or loss of sight or hearing. However, since the year 1919 section 56 precursors have included the following

"catch all" provision, which the employee claims applies to her injury:

In all other cases of injury [i.e. not a case involving loss of member, sight or hearing] to the above-mentioned members, eyes or hearing *where the usefulness of any physical function thereof is permanently impaired*, the specific compensable periods for presumed total incapacity on account thereof shall bear such relation to the periods above specified as the percentage of permanent impairment due to the injury to such member, eyes or hearing shall bear to the total loss thereof. The commission upon petition therefor by either party shall determine such percentage. [emphasis added]

39 M.R.S.A. § 56 (Supp. 1981–1982).

■ The employee contends that the Commission's written response to her motion for specific findings evidences a misapplication of the statutory standard for evaluating a claim of permanent impairment. In its September 1, 1981 opinion the Commission stated that the employee "failed in its burden of demonstrating any *permanent loss of physical function*." (emphasis added). The employee perceives a distinction between this language and the statutory standard, permanent impairment of the "*usefulness* of any physical function." (emphasis added). 39 M.R.S.A. § 56 (Supp. 1981–1982). We need not decide this question, since the record indicates that the Commission was familiar with and did follow the language of section 56. In the original decree issued on January 30, 1980, the Commission found as a fact and concluded as a matter of law that "the employee has failed in its burden of showing any permanent impairment to the *usefulness* of the physical function of the shoulder." (emphasis added) Whether or not this finding is in fact supported by the evidence, it is clear in any event that the Commission applied the correct rule.

■■ We now turn to the second question raised by the employee with respect to

the denial of her petition. As with any other appeal from a decision of the Worker's Compensation Commission, our scope of review of the Commission's findings of fact is limited to deciding whether there is competent evidence on the record to support such findings. *See Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512 (1980). We can reverse only if there is no competent evidence to support the Commission's finding that the employee had not suffered a permanent impairment of the usefulness of the physical function of her shoulder.

■ The Commission stated in its specific findings that it had relied on the testimony of Dr. Barrett in denying the employee's petition. Dr. Barrett stated that at the time he examined Ms. Lowe she was not suffering from a permanent impairment. He also stated that she was not the victim of a chronic tension syndrome, displayed no objective physical signs of organic disease or pathology, and evidenced intact sensory, motor and strength components of her upper right extremity. He further testified that he would not place any physical restrictions on her work activity. Although the doctor was not specifically asked whether the employee had lost the *usefulness* of the physical function of her shoulder, the record as a whole supports the Commission's conclusion that Dr. Barrett believed she had not sustained any lasting damage. It was reasonable for the Commission to infer, therefore, that Dr. Barrett believed the usefulness of the physical function of her shoulder had not been impaired. While we recognize that the record in this case unquestionably contains significant evidence contrary to the Commission's finding that no permanent impairment exists, we are limited to determining whether there is competent evidence to support the Commission's finding. Since Dr. Barrett's testimony provides the requisite support, we cannot disturb the Commission's decision denying the employee's petition.

The entry is:

Judgment affirmed.

McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and WATHEN, JJ., concur.

DUFRESNE, Active Retired Justice, dissenting.

Janice Lowe fell and dislocated her right shoulder while working as a gas station attendant for C. N. Brown Company on October 20, 1978. An agreement was executed on November 22, 1978, between the employer and employee under which benefits for total incapacity were paid. The Workers' Compensation Commission approved it.

The employer filed its petition for review of incapacity on April 20, 1979, while the employee countered with a separate petition to have the Commission determine the extent of permanent impairment due to her injury of October 20, 1978. A single consolidated hearing was held on November 28, 1979, on both petitions and the commissioner found in favor of the employer in each case by decree dated January 30, 1980. There was error and I would vacate the conforming pro forma decree with further remand to the Commission. I respectfully dissent.

At the single hearing on November 28, 1979, more than one year following her initial fall at work, the employee testified that, after being discharged from treatment in April, 1979, by her attending physician

> as cured as she ever would be—[h]er condition appeared normal,—but I warned her she wouldn't be able to use her arm, because it would come back again if she did,

she suffered a recurrence of her previous shoulder injury after stacking ordinary cordwood for a friend, and, when asked by her employer's counsel what things she did not think she could do, answered:

> I don't feel that I can do any constant motion with my arms, because if I do a constant motion, it becomes painful.

At that hearing, her treating physician, Dr. Margaret Millard, testified that Ms. Lowe, as a result of her initial work-related fall, had developed tendonitis due to overstrain of the muscles of her shoulder. They had been stretched beyond their normal capacity and had gone into spasm. The prognosis of her patient's condition for the future was stated as follows:

There's a well-known tendency for tendonitis to recur. If it has occurred once due to injury, it is liable to occur again when the extremity is used in a normal way, so although I was confident I could overcome the severe pain and tenderness that she had at that time, I thought that the chances of her being able to use her arm in the way she could before the accident was extremely slender.

Then, Dr. Millard testified that she treated Ms. Lowe on October 17 and October 26, 1979, for the wood-stacking incident, which, she said, caused the spasm to come back again. When the employee's counsel sought to have Dr. Millard's expert opinion as to whether Ms. Lowe's condition resulting from the wood-stacking incident was causally related medically speaking to the initial injury of October 20, 1978, the doctor was not permitted to answer, the commissioner saying:

I don't see its materiality for the life of me. The objection is sustained, . . . [o]n the basis of immateriality.

John W. Barrett, the employer's medical expert, on the other hand, testified at that hearing that on March 27, 1979, the only occasion when he saw Ms. Lowe, he found no evidence of organic disease or pathology and gave it as his opinion that the woman did not suffer from any permanent physical impairment to her right upper extremity. He conceded on cross-examination that he had no first hand knowledge about any exacerbation or aggravation of her condition due to the October, 1979, incident, *i.e.* the wood-stacking occurrence. Pressed by counsel with the question—

And tendonitis is a condition which, once a person has acquired the condition of tendonitis, it's a condition that can come and go over time with becoming exacerbated by some kind of stress and strain,—

Dr. Barrett explained his medical thinking on tendonitis:

I hesitate to answer because there is a tendency for tendonitis to recur. The tendency seems to exist in some people and is probabably (sic) on the basis of some basic metabolic defects in certain individuals. I think of it as a disease rather than an injury—maybe that helps or not, I don't know.

Initially, let us say that Dr. Barrett's opinion to the effect that tendonitis cannot ever be a work-related injury, which the commissioner may have accepted in his final analysis of the problem before him, is the same opinion given by the same witness which was characterized as error, when the matter is conclusively determined by an open-ended agreement to pay total compensation, in the case of *Wallace v. Chaplin Cadillac-Olds, Inc.*, Me., 433 A.2d 394, 396 (1981).

It is obvious from this record that, because Ms. Lowe's condition had subsided again after treatment following the wood-stacking incident as it had in April 1979, when she was discharged from further treatment by her attending physician, the commissioner took the position that causal relationship between a recurrence of the original injury due to tendonitis as a basis for continued benefits for total incapacity or in proof of permanent impairment was irrelevant; the commissioner did expressly state that, since the woman continues to be paid compensation for total incapacity right up until "today" [the day of hearing] and that any decision he would make could not be made retroactive, nor could he compel reimbursement of excessive payments, he did not see how it was relevant to show causal relation between the October flare-up and the original injury. In this, he was in error.

True, the assumed obligation of the employer to pay benefits for total incapacity,

open-ended as it was, absent the taking of the specific protective provisions of 39 M.R.S.A. § 100, continues until altered by a final decision upon a petition for review of incapacity. *Mullen v. Brown Homes, Inc.,* Me., 358 A.2d 557, 559 (1976); *Waltz v. Boston & Rockland Transportation Co.,* 161 Me. 359, 212 A.2d 431 (1965).

But this statutorily mandated continuance of compensation payments pending an employer's petition for review of incapacity until decision on the issue is no excuse for failure of the commissioner to determine in the one proceeding the intermittent separate and distinct periods of compensability, if such be the case, during which the employee was entitled to compensation, in the absence of a final decision on the question whether the incapacity has diminished or ended. Common sense does demand that, in the case of an employer's first petition for review of incapacity, a determination of the employee's condition of disability and his entitlement to compensation be made for the entire period from the date of the injury to the date of the hearing, whether such disability and entitlement to compensation during said period happen to be on an intermittent basis. *See Rowe v. Keyes Fibre Co.,* 152 Me. 317, 129 A.2d 210 (1957).

In a petition for review of incapacity the employer has the ultimate burden of proof as the moving party to show that the employee's incapacity, here total because of the parties' approved agreement, had either diminished or ended. *Lancaster v. Cooper Industries,* Me., 387 A.2d 5, 7 (1978); *Sockabasin v. Indian Township Government,* Me., 443 A.2d 69, 71 (1982). A petition for review of incapacity addresses itself to a change of circumstances since the time of the earlier determination by commission decree or by agreement of the parties approved by the commission, in relation to the employee's disability and its causal connection to the work incident. 39 M.R.S.A. § 100, as amended. A change of circumstances justifying reduction, suspension or termination of compensation may consist of

a change in the cause of the employee's continuing disability, such as, for example, through the occurrence of an independent supervening cause. *Dufault v. Midland-Ross of Canada, Ltd.,* Me., 380 A.2d 200, 203 (1977).

In the instant petition for review of incapacity on the ground that the employee's disability had ended, the burden of proof rested upon the employer as the moving party, not only to demonstrate by a fair preponderance of the evidence that the effect of Ms. Lowe's injury sustained on October 20, 1978, had terminated in April 1979 when she was discharged from treatment by her attending physician, but also that the original fall was not a continuing contributing factor to her renewed disability which arose out of the non-work-related wood-stacking incident of October, 1979. In other words, the burden of proof was on the employer to negate the existence of tendonitis as claimed by the employee as the causative factor associated with the original injury and causally responsible for the reactivation of the incapacity. *See Soucy v. Fraser Paper, Limited,* Me., 267 A.2d 919, 921 (1970).

Indeed, except for a self-inflicted intentional or reckless injury, the employee's own conduct in a non-work-related situation does not relieve the employer of full liability for the employee's disability when there exists or remains any causative relationship between the work-related injury and the ultimate condition resulting from the non-work-related incident, whether the ultimate condition proves to be a recurrence of the original injury as in tendonitis, an aggravation of the previous injury or the acceleration of the debilitating effect which the initial injury would have been likely to produce on its own. *See Richardson v. Robbins Lumber, Inc.,* Me., 379 A.2d 380, 383 (1977).

In the instant case, the commissioner failed to make any finding respecting the issue of tendonitis and erroneously prevented the employee from showing through her medical expert the causal relation between

the original injury and her incapacity resulting from the wood-stacking incident. By so doing, the commissioner erroneously excluded as irrelevant the employee's medical expert evidence of Dr. Millard which purported to link Ms. Lowe's alleged permanent impairment to her right shoulder to both the wood-stacking incident and the original injury. To find that the employee has failed in her burden of demonstrating that the injury of October 20, 1978 resulted in any permanent loss of physical function to her upper extremity in the case of the employee's petition for determination of the extent of permanent impairment, and to find in the case of the employer's review of incapacity that the employee's wood-stacking activity is the cause of any subsequent disability, with further finding that the employee's injury of October 20, 1978 was no longer a factor in any disability that may have existed at the time of hearing, as the commissioner did, was clear error, because the commissioner erroneously excluded the employee's purported medical expert evidence to the contrary.

Furthermore, in the employer's petition for review of incapacity, the commissioner placed the burden of proof upon the employee, which this Court said was erroneous as a matter of law. *Smith v. Dexter Oil Co.*, Me., 408 A.2d 1014, 1015 (1979). In his original decree of January 30, 1980, the commissioner specifically found as a fact and concluded as a matter of law "that the employee has failed in its [her] burden of demonstrating a causal connection between that incident [the wood-stacking incident] and the work injury of October 20, 1978." In his subsequent decree of September 1, 1981, after remand for findings of facts and conclusions of law, although he did not repeat the quoted language, the commissioner did not expressly draw back from his original ruling, but merely stated that he found as a fact "that as of April 24, 1979, the employee was no longer disabled from the residuals of her injury on October 20, 1978," an equivocal stance permitting the original ruling to carry over.

Also, there was error when the commissioner in his second decree expressly indicated that he went beyond the evidence in the case in testing the credibility and competence of Dr. Barrett. He stated:

"I further find as a fact that the employee has failed in her burden of demonstrating that the injury of October 20, 1978 resulted in any permanent loss of physical function to her upper extremity. In that regard, the evidence of Dr. Millard, a family practitioner, and Dr. Barrett, a board-certified orthopedic surgeon, differ. To the extent that those doctors' opinions differ, I have taken as a medical fact the opinion of Dr. Barrett. I do so because Dr. Barrett has testified before this Commission on numerous occasions and, those occasions have allowed me to test the credibility and competence of Dr. Barrett on numerous occasions.

Our Court has approached with considerable deference administrative agency decisions based upon the experience and expertise of agency officials such as our workers' compensation commissioners. While administrative expertise does encompass powers of analysis not generally possessed by others, the members of any administrative board or commission must make their expert analysis on the record before them. As stated by Professor Davis (2 K. Davis, Administrative Law § 15.10, at 402–04 (1958)):

The basic principle is that parties should have opportunity to meet in the appropriate fashion all materials that influence decisions. Nothing short of opportunity for cross-examination and presentation of rebuttal evidence is appropriate for disputed adjudicative facts at the center of the controversy.

The rule applies as well to the adjudicative evaluation of witnesses. To test the credibility and competency of witnesses, be they expert witnesses or others, by their testimony given in other cases, albeit on numerous occasions, if permissible under the rubric of administrative expertise,

would substantially stifle the right of the parties to full cross-examination of witnesses and would likely lead to unreasonable or arbitrary findings practically impossible of party challenge or review by the courts. Administrative expertise is the value of the administrator's experience in interpreting and analyzing the existing evidentiary factual record in the particular case at issue which serves to make proper findings and ultimate decision on all questions involved therein, including matters of credibility or competency. *See Abbotts Dairies Div. of Fairmont Foods, Inc. v. Butz*, 389 F.Supp. 1 (1975). A valid exercise of agency expertise, like other agency action, must find ultimate support upon evidence taken at the hearing or upon facts officially noticed by the hearing officer in the record of such hearing. *Railroad Commission of Texas v. Lone Star Gas Co.*, Tex.Civ.App., 611 S.W.2d 911, 913 (1981). An administrative agency cannot take notice of results reached in other cases unless its doing so is made to appear in the record of the case being heard and the evidentiary facts of such other cases thus noted are made part of the current record so that judicial reviewability may be saved. *See Transcontinental Bus System v. State Corp. Com'n*, 56 N.M. 158, 241 P.2d 829, 843 (1952).

The commissioner is not himself a medical expert and it would not be sound practice to allow him to compare his findings of credibility and competence of medical testimony in prior proceedings involving similar or different medical problems and different parties with the current testimony of the same or different doctors in order to reach his ultimate conclusion in the case before him to the substantial detriment of one of the parties to the proceeding. *See Van Horn v. Hillcrest Foods, Inc.*, Me., 392 A.2d 52, 55, n. 4 (1978).

It was inappropriate and reversible error for the commissioner to rely upon his personal prior contacts with Dr. Barrett in other cases to assess his credibility and competence in the instant case. *Smith v.*

*Young Women's Christian Ass'n*, Me., 438 A.2d 1276, 1279 (1982).

There were multiple errors in the case. The employee was entitled to have a specific finding of fact and conclusion of law whether, as a result of the October 20, 1978 occurrence, she was suffering from tendonitis and, if so, whether the wood-stacking incident of October 1979 was an independent intervening cause of her disability arising therefrom, *i.e.* whether the employer sustained its burden of proof in negating that the initial injury of October 20, 1978, contributed in any way to the apparent recurrence of the employee's original injury. The employee should be permitted to present medical expert evidence in relation to the issue of tendonitis and the causal relation between the original injury and the alleged recurrence because of the wood-stacking incident, as well as in proof of the permanent impairment or permanent loss of usefulness of her right upper extremity.

I would order the following entry:

Appeal sustained.

Pro forma decree of the Superior Court in relation to both petitions vacated.

Remanded to the Superior Court for further remand to the Workers' Compensation Commission for further hearing of evidence to supplement the present record and for further findings of fact and conclusions of law on the whole record, consistent with the opinion herein.